IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION
NETWORK,

                    Plaintiff,                Civil Action
                                              No 1: 25-825

          vs.                                 Washington, DC
                                              November 24, 2025
FOOD AND DRUG ADMINISTRATION,
et al,
                                              11:05 a.m.
                    Defendants.
_____


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:        Mark Taylor
                          SIRI & GLIMSTAD LLP
                          745 Fifth Avenue
                          Suite 500
                          New York, NY 10151


For the Defendant:        Dimitar Georgiev-Remmel
                          DOJ-USAO
                          Civil Division
                          601 D Street NW
                          Washington, DC 20530




Court Reporter:           Sherry Lindsay
                          Official Court Reporter
                          U.S. District & Bankruptcy Courts
                          333 Constitution Avenue, NW
                          Room 6710
                          Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Your Honor, this is civil matter 25-825, *Informed Consent Action Network versus Food and Drug Administration.*

Would counsel please state your name for the record beginning with the plaintiff.

MR. TAYLOR:  Plaintiff in this matter is ICAN and this is Mark Taylor for ICAN.

THE COURT:  All right.  Good morning to you.

MR. TAYLOR:  Good morning, Your Honor.

MR. GEORGIEV:  Good morning, Your Honor.  Dimitar Georgiev for the United States.  With me also is Elizabeth Bonomo for the FDA.

THE COURT:  All right.  Good morning to all of you as well.

So I am here on the government's or the FDA's motion for an 18-month stay.  This is obviously something that I have seen before in other cases in light of the Texas litigation.  But I do have a number of questions about where things stand now.  I'm happy to hear if you are prepared and want to give any remarks, I'm happy to hear them or I'm happy to also just jump into questions.

Mr. Georgiev, it is the government's motion.  Anything you want to add or address before we get into any questions I have?

MR. GEORGIEV:  Your Honor, you had asked four questions in your minute order and I have some responses to those.  If you like, I can give them now or if you prefer to go --

THE COURT:  Yeah, please.

MR. GEORGIEV:  Okay.  So your first question was whether this case differs in any meaningful way from the case that Chief Judge Boasberg stayed.  And that is civil action 25-823.  The government's position is that it doesn't -- the only difference is the age of the FOIA request.  The age of the FOIA request in that case is from 2019.  And it's actually towards the top of the queue, so we anticipate that the government would start processing that request much sooner than the request that is at issue in this case, which is currently number 405th in the queue.

THE COURT:  And that's the queue for complex cases; correct?

MR. GEORGIEV:  Correct.  Yes, Your Honor.

THE COURT:  Okay.

MR. GEORGIEV:  Then you asked a question about the additional staff that the FDA is pursuing.  So there currently are one -- for the complex side there is one supervisor and eight staff and the FDA is onboarding eight contractors at the moment.

THE COURT:  I'm sorry.  So I want to make sure I am

hearing you right.  There is one supervisor and eight staff and eight contractors.

MR. GEORGIEV:  Correct.  And it's onboarding eight contractors, so that is additional resources that FDA is bringing on to help address the queue.

THE COURT:  When will they be onboarded?

MR. GEORGIEV:  The onboarding is ongoing.  I don't have a specific date, Your Honor.  But that's -- that is certainly much more advanced than the last time we were in front of you in different cases.

THE COURT:  Okay.

MR. GEORGIEV:  For PHMPT-2 where the FDA is under an order from the North District of Texas to continue producing 180,000 pages per month until October 1, 2026, the FDA is dedicating two supervisors and nine staff.  And it has extended a contract that provides for six full-time equivalent contractors to help process those pages.

One new development in PHMPT-1, the production in that case is completed and the only remaining issue is attorney's fees.  So that is where FDA is at the moment.

THE COURT:  I'm sorry.  Are the people who are working on the PHMPT-2 case, are they also doing other matters or are they just devoted solely to that matter?

MR. GEORGIEV:  My understanding is that they are devoted almost exclusively to PHMPT-2.  Again, that is 180,000

pages per month until October 2026.

THE COURT:  Okay.  Are any of the individuals you identified who are working on the complex queue more generally, the one supervisor, the eight staff and the eight contractors, are any of those people working on the PHMPT-2 matter or are they working exclusively on other matters in the queue?

MR. GEORGIEV:  My understanding Your Honor is that their focus is on the complex matter, complex side.  I don't want to represent that it's entirely exclusive.  I can confirm with the agency and we can put that in a joint status report.  But that is -- my understanding is that their focus is on the general queue, the complex queue, versus the PHMPT staff, their focus is on PHMPT-2.

There are also -- we had a fairly extensive or lengthy lapse of appropriations.  The FOIA operation at FDA continued to operate during the lapse of appropriations, so there was -- they continued to process records.  And I think those are the questions that the Court had identified in the minute order.  I'm happy to follow up if -- and, oh, and one other thing, Your Honor.  There is -- the FDA has received an exemption from the government-wide hiring freeze.  So it's working on augmenting its staff with additional employees.

THE COURT:  What is the --

MR. GEORGIEV:  I don't have a specific number for how many resources they are bringing on.

THE COURT:  And how do the number of individuals who are currently working on the complex queue compare to the number of individuals who were working on the complex queue say, December 31st, 2024?  So a little less than a year ago.

MR. GEORGIEV:  That is -- I don't know the answer to that question.  But I can follow up with a report today to get that to the Court's attention.

THE COURT:  Because my concern is -- my concern is that if actions were taken to decrease the number of people who are actually processing records, even though I understand that FDA has been trying to perhaps backpedal somewhat from that, that's concerning, given the state of affairs if people were being RIF'ed.  And then efforts were made to bring them back. If you didn't bring them all back and you're behind because of efforts to RIF that's concerning to me.

MR. GEORGIEV:  I understand your concern, Your Honor. I think what is important to take out of this report is that FDA is actively working not only to -- if there were any RIFs to bring those folks back or their positions back, but it's actively working to increase its capacity.  That is both through hiring, but also through contracting work.  Obviously, in government, things take a little bit longer than we would like certainly.  But certainly the FDA is doing what it can to augment its capabilities to address these extraordinary orders from the Northern District of Texas which Chief Judge Boasberg

recognized and this Court has recognized in the past.

THE COURT:  Yeah.  I have recognized it in the past, although I have to say, if there is a team that is just working entirely on the Texas litigation, I'm not quite sure how much that litigation affects what is going on here now.  It may be there is a backlog, but if there are people who have been hired just to do that litigation, I'm not sure why that should affect the normal FOIA processing.

MR. GEORGIEV:  So I don't think that a team was specifically hired to work on PHMPT-2.  I think what happened is -- when the PHMPT-1 and 2 orders were issued, the FDA restructured its operation to dedicate resources so that he can address that extraordinary -- those extraordinary orders and to be in compliance with those.  And what was left was dedicated to address the complex queue.  It's not like the FDA just hired a number of individuals just to work on the Northern Texas litigation.

THE COURT:  And in your papers you indicate -- you requested the Court enter a stay for 18 months and then say, at the end of the stay, you may be in a position to estimate when these records can actually be processed.  And by my calculations, we are already 22 months in the period of time that the request has been pending.  It does seem like an awful lot to say, let's wait another 18 months after waiting 22 months simply to have an estimate of when you are going to be

able to get to it, because you could easily come to me in another 18 months and say, Judge, we need another 5 years before we get to this.

So it would be very helpful for me to have some estimate of what that actually means.  Are we talking about 6 months after the 18-month stay or are we talking about another 5 years afterwards?

MR. GEORGIEV:  And, Your Honor, I understand your concern and I wish I had a better answer to this.  The -- it is a product of the operational realities at the FDA.  The office is processing -- generally processing records on first in, first out basis, which *Open America* -- D.C. Circuit has recognized in *Open America* is an appropriate way of processing FOIA requests.  And certainly we would hope that we would have a much better estimate at the conclusion of that period.  But the operational realities are the operational realities.  And the resources have to be dedicated to previously submitted requests, as well as to PHMPT-2 FOIA from Northern District of Texas.

THE COURT:  Are there any congressional budgetary restraints that would keep the FDA from hiring another 20 people to do those process -- to process these requests?  Because I think that that's really what the D.C. Circuit is talking about in *Open America* are the congressionally imposed restraints.  I think if the agency itself decides not to hire

people that is not a good answer.  If Congress hasn't appropriated the funds to hire people, that is a good answer.

MR. GEORGIEV:  I am not -- I'm not aware, Your Honor, of a restraint, but I need to confer with FDA to get you an answer to that question.

THE COURT:  Okay.  All right.  Anything else you want to add?

MR. GEORGIEV:  And just one -- more broadly, Your Honor, you had asked whether the parties' position on whether this -- your consideration should be stayed pending the outcome of the appeal.  Our position is that the parties are the same.  The issues -- I mean, I guess we will find out exactly what the issues are when ICAN files its statement of issues later today.  But it strikes us that the opinion on the merits from the D.C. Circuit will have a direct bearing on how Your Honor should consider the stay here and could provide some very helpful guidance.  So from our perspective, staying the termination on the pending motion before the Court pending the outcome of that appeal makes sense.

THE COURT:  And do you know -- and this may be more of a question for Mr. Taylor, but do you know if anyone is seeking expedition in the D.C. Circuit?

MR. GEORGIEV:  Not to my knowledge.

THE COURT:  Because, you know, it could be pretty close to the end of the 18-month period of time before the D.C.

Circuit renders a decision unless it's expedited.

MR. GEORGIEV:  That appeal certainly is at the very early stages in the process, yes.

THE COURT:  Okay.  All right.  Let me hear from Mr. Taylor and I will give you a chance to respond.

MR. TAYLOR:  Thank you, Your Honor.  So perhaps unsurprisingly, we take the contrary position on almost all of Your Honor's questions.  We'll start with the first one, how should the Court proceed in the light of the pending appeal. The Court should move forward and either deny or grant the motion to stay and enforce FOIA consistent with the statute. FOIA has its deadlines.  Once those have lapsed, FOIA directs the Court to supervise disclosure and not defer it.  There is only one narrow pathway for delay and that is under 552(a)(6)(C) where the government must affirmatively demonstrate both exceptional circumstances and due diligence. So that burden still applies here today.  There is no automatic stay because of the appeal.

And the government's burden in obtaining a stay does not go away merely because overlapping legal questions are being litigated elsewhere.  If the Court here were to wait to decide this stay request until some future date after the appeal court has ruled, which could be years away, far longer than the normal lifespan of a FOIA case in this Court, that would functionally grant the same relief that the FDA seeks,

delay without requiring the showing that the congress required in the statute.

THE COURT:  Have you sought expedition in the D.C. Circuit?

MR. TAYLOR:  We have not.  I don't know that we are at the stage where we can even request that.  But I could certainly try it, but, no, we have not sought an expedited --

THE COURT:  I don't mean to encourage you one way or the other.  I just wanted to know.  It just seemed odd to be encouraging all of us to be moving with expedition here when you are not necessarily moving with expedition in the Circuit yourself.

MR. TAYLOR:  Well, if it's an option to get it to go faster and the Court would grant that at the Circuit Court level, we would be more than happy to do that and it's actually a good suggestion I will take.

THE COURT:  I obviously can't speak to what the Circuit would do.  All I know is they are not going to grant it unless you ask.

MR. TAYLOR:  That's true.  That's a fair point.  Fair point.  Appreciate that.

So going back to that first question then, to allow the filing of an appeal in one case, to freeze litigation in every parallel case involving the same requesters and the same defendants would give the agency an informal procedural

mechanism to stall FOIA cases across multiple actions simply by forcing an appeal.  So obviously that's not how congress designed FOIA to operate.  And nothing in the statute authorizes a stay based solely on the existence of a pending appellate review that raises similar legal questions.

Now on to the second point whether this case differs in any material respect from the case that is currently on appeal.  The answer to that is, yes, it does, and materially.  This case differs -- it involves a different FOIA request, which seeks different records, producing different harm from continued delay.

ICAN continues to need these specific records.  And delaying production simply because a separate request involving overlapping legal arguments is on appeal would frustrate both the purpose and the structure of FOIA.

THE COURT:  Let me ask you -- I have got a question for you about that, which is, it is sort of striking to me that ICAN has filed 350 or more FOIA requests since 2019.  And there are 220 that remain pending with the agency.  And I suppose the agency might be open to it if you said, this one is really so important we are willing to bump that ahead of our other 220.  And they may be willing to bump you up in the queue if you are willing to do that.  It rings a little hollow to say, this one is different, this is really important, but it's no more important than our other 220 pending requests.

MR. TAYLOR:  So as Your Honor is probably aware, the government has taken the position repeatedly throughout FOIA litigation that to do that would be queue jumping and that they must do a first in, first out.  And that even if we say this one is more important, they are not going to change their queue.  That is the representations --

THE COURT:  Well, I'm not sure that is correct with respect to your own requests.  They are not going to bump you ahead of someone else who is in the queue.  But I don't know whether they might bump you ahead of your own requests and say, if you want to deprioritize some of our other requests, that's fine with them, compared to this request.  I think that quite fairly, they don't want to say you should be able to jump ahead of other requesters in the process, but if you wanted to jump ahead of your own, I don't know, perhaps they would consider that.

MR. TAYLOR:  So perhaps.  We have never had any indication that was the case.  All we have received was, you know, we do strict in -- first in, first out and we won't change our queue ever.

THE COURT:  Let me ask you.  From my perspective, is that something that -- is this request more important than others you have and you would want to bump this ahead if you could?

MR. TAYLOR:  Your Honor, I would have to consult with

the client on that as far as which ones they would prioritize and which ones they wouldn't.  I am not at liberty to speak for them on that particular question.  I don't know the answer to that, but I am sure there are some things that are more important than others.  I'm sure that's the case.  I just don't know which ones those would be off the top of my head.

But going back to this -- you know, FOIA rights are request specific.  And so this specific request, you know, has its own consequences if these records aren't produced in a timely manner.  So to delay all FOIA requests just because of similar parties, would be patently unfair.

Now, under *Landis*, the government bears a heavy burden before it obtains a stay.  And the Courts must ensure that the stay does not impose hardship or inequity.  Here, the imbalance is quite stark.  The delay benefits only the government while the requestor loses timely access to public records, which is the entire point of FOIA.  Postponing compliance postpones government accountability, while the same delay is only a deprivation of the requestor's rights.

In FOIA cases, the delay is the injury.  Each additional day pushing disclosure outside the time period in which the information matters to the public, especially for a news media requestor such as ICAN.  ICAN is a media requester so it's for the purpose of timely news that these requests are being made.

THE COURT:  Are you counsel in the Texas litigation as well?

MR. TAYLOR:  Our firm is, I personally am not.

THE COURT:  I mean, isn't that -- that is -- it does seem to me is one of the principle sources of the problem is the sort of extraordinary requests that were made and granted in that litigation.  And I, frankly, kind of wonder almost whether there is a conflict of interest at some point where you are asking the Court in Texas to do something that is frustrating the rights of your other clients to actually get access to FOIA requests.

MR. TAYLOR:  Well, Your Honor, there is lots to unpack in that.  Let me begin with PHMPT litigation.  What that litigation actually confirms is that the FDA can dramatically accelerate production when it's judicially required to do so.  In that case, the FDA initially proposed 500 pages per month.  At the estimated volume of responsive documents, that would have required between 75 and 100 years to complete the production.

THE COURT:  Right.  That is a product of simply how many documents were requested.  Five hundred pages, I mean, you know, more than -- I guarantee you that I have handled more FOIA cases than probably all of the judges in Texas put together, just because this Court gets so much FOIA litigation.  Five hundred to 1,000 pages is very typical.  I mean, I have

never, ever in any FOIA request even in ones that have taken years to comply with, ordered anything anywhere in the universe of what was requested and provided there. And even in cases that have gone on for -- taken 10 years to produce all of the documents never done anything that has come close to that. I mean, you could knock 2 or 3 or 4 zeros off and I haven't done it.

MR. TAYLOR: Sure. I understand that is the traditional practice. But the Court in Texas, Your Honor, simply recognized that 75 to 100 years to produce documents that the statute requires a determination to be made within 20 days is not realistic. It does not honor or respect the statute in any way, shape or form. And so that's just the reality that, you know, we could not wait -- in 75 years, you, me and opposing counsel and the people who requested these documents will all be dead. Seventy-five years from now, this request isn't going to matter. And so to wait 75 years to produce those documents is unrealistic.

THE COURT: There is no way that there is anyone in your organization who could review all of the documents that are being requested in probably their lifetimes as well. I mean, you get --

MR. TAYLOR: Oh, no, Your Honor.

THE COURT: You get 10 million pages of documents, are you going to sit down or 20 of you are going to sit down

and review them all?  You are not going to be able to review them.

MR. TAYLOR:  Technology has many ways of helping us to review that volume of documents, Your Honor.  We are not concerned about the review process.

So what PHMPT does teach us though is that the agency can comply when it's directed to do so.  When it's impossible -- it's always represented to this Court and many others, it's impossible for us to do that magnitude of production, it's impossible for us to comply.  And yet when the Court says, well, the statute requires it and therefore the Court orders it, they rise to the occasion.  And so, you know, the lesson from PHMPT is that enforcement leads to compliance.  And that history is instructive here.

FOIA is broken, Your Honor.  And you know that as well as anybody.  The statute is not being honored in any way, shape or form by the government.  Its deadlines are blown past consistently.  And this is not how it was designed to be.  And it will not get fixed until we do something different than what we have been doing for the last 20 years.  And the difference is we start saying, the statute requires it, you must comply.  If you are unable to comply, then you need to go to congress and ask for additional resources.  That's exactly what congress said should happen in this very situation back when it made the 1998 amendments.  Congress specifically said, a lack of

resources is not justification for not complying if the specific records -- says the agency should inform congress of the additional resources needed to fully comply with FOIA.  In the absence of such information on budget requests and management initiatives, the complaint by agencies that congress has denied the resources necessary to comply with the statutory deadlines is unsupportable.  And the Ninth Circuit agreed with that and quoted that language in its *Fiduccia* case, where it pointed out that inadequate resources cannot form the basis of exceptional circumstances, because the decision not to request more funding from congress would be consistent with a policy choice to delay FOIA requests rather than ask congress for the additional funds to meet them in a timely way.  So we have no evidence in this case.  We have seen no evidence of the FDA going to congress and asking for the resources to fully comply.  That's not in the record anywhere in any of our cases.  And so what that tells us is FDA is making a policy decision to be -- to delay and not comply with FOIA rather than go to congress.

THE COURT:  I have to say, I agree with what you say in part in that I do think that there are significant problems with FOIA and the timeliness of responses.  But I think that if there is like any law firm in the country that is not well positioned to make your point, it's probably your firm.  Because I think that is the province partially of the agencies, but when you have FOIA requestors that are submitting 350

requests since 2019 that are seeking millions and millions of pages of records, that's part of the problem too where people are not focusing on what they really need and are simply overwhelming agencies in ways that are forcing out the ordinary FOIA requesters so they don't have an opportunity ever to have their request considered because there are a handful of FOIA requesters that are so overwhelming the system that the system can't function.  I think that's part of the problem as well.

MR. TAYLOR:  And I -- while I respect that position, Your Honor, it's not wrong for ICAN to be exercising its right under FOIA to seek news information that its audience wants to know and which FOIA gives it a right to receive in a timely manner.  Further when those rights are being violated by the government --

THE COURT:  Let me ask you a question then.  If your position is that you can submit a request to FDA saying I would like every document that FDA has and provide it in 20 days.  And if you can't do it and provide it in 20 days, you have to go out and hire 10,000 people to work on that.  That's your view of what FOIA requires, unless Congress says, we are just never going to appropriate the money, they at least have to go to congress and say, appropriate the money for us to hire 10,000 people to process the records at the FDA.

There has got to be some logical breaking point to your argument.

MR. TAYLOR:  Your Honor, you broke up on some of that, so I didn't hear everything that you said.  But I think I understood the message.  I think I got the point.

THE COURT:  I am just asking you what the limiting principle is to your argument.  Can you ask for every document that the FDA has and then say, the FDA has an obligation to as promptly as humanly possible respond to that including going to congress and asking for 10,000 people to be -- to hire 10,000 people to process that request?

MR. TAYLOR:  So, Your Honor, our requests obviously aren't for a specific number of documents.  Our request are about information.  So, for example, show us the test results upon which you relied in licensing the COVID-19 -- Johnson & Johnson COVID-19 vaccine.  How many records that is, is not within our control.  We just want to know what they relied upon.  So the requests are not document number specific.  That is a result of how they run their operation, right, how many number of documents are requested.  We have absolutely no control over how many documents it is.

What we do know is we would like to know, for example, in this case, the test results that they relied upon in licensing certain vaccines.  And so if that is a million documents, we have no control over that.  That is the FDA and the way they run their operation that creates that problem.

So to ask the question, please show us what you

relied upon is certainly within the purpose and the scope of FOIA. And, you know, when the government -- we are reasonable people and we will certainly work with them. But their excuses run hollow when they haven't gone to congress and asked for more resources. And, frankly, from our own experience, we know that they do not follow a first-in, first-out policy. They say they do. They represent so in their affidavits. But we can show from our own data, from the number of requests that we have that they don't do that. And we would love the opportunity to present that to the Court in an evidentiary hearing where we could show you, they do not follow first in, first out. That's not true.

THE COURT: Let me ask you about that. Even if they -- assuming they don't follow first in, first out, why should the Court order that you be bumped ahead of somebody else in the queue, putting aside what the FDA is doing. I have an obligation to other members of the public and other FOIA requesters, why should I decide that an entity that has submitted 350 FOIA requests should get its FOIA request processed more quickly than someone who has submitted two or three FOIA requests and has an interest in those requests? Why do you get priority?

MR. TAYLOR: So in all fairness, Your Honor, it's actually not the judge -- the Court's responsibility to manage the FDA's queue or to say who gets produced when. That's

not -- that's not within the scope of what you're required to do here.  Our right as a -- ICAN's right is to make the request for the information.

The statute gives its deadlines and the statute says when the government blows past those deadlines that we go to the Court for enforcement.  That is what we have done.  We have done nothing but follow the statute.  We have done nothing but exercise our rights under the statute.

THE COURT:  I'm sorry to interrupt.  But you were the one who brought up the first in, first out.  So I took it you were suggesting that I should be ordering that they produce your documents ahead of someone else's.

MR. TAYLOR:  No, I'm sorry, Your Honor.  That's not the point I was trying to make with that.

The point I was trying to make with the not following the first in, first out and I kind of skipped logical thoughts here.  The showing of due diligence.  Right.  Due diligence is one of the things that has to be shown in order to grant a stay.  And the FDA consistently says, well, we follow a first-in, first-out policy.  And some courts have accepted that as a showing of due diligence.  The reality is they don't do that.  So first in, first out, if it it's not actually being followed does not show due diligence.  Due diligence has to be shown for this specific request.

Going to your question of what efforts the FDA has

made to hire, detail or assign additional staff, those -- ICAN welcomes any reforms, any efforts to go faster on the part of the agency.  However, the statute requires proof that the agency has acted diligently on this request, not that it's acting diligently in general.  But on this request, the PHMPT litigation confirms that the FDA can dramatically accelerate production when they are required to do so judicially.

And so here, they have not shown that they are exercising due diligence on this request in this matter.  FOIA doesn't permit the Court to excuse delay and convert the agency's backlog into a second judicial backlog of stayed cases.  A law is only as good as its enforcement.  And that is what we have learned from PHMPT.  Where there is no enforcement, there is no compliance.  Granting a stay only serves to take the pressure off the agency and to shift its backlog of FOIA requests into a backlog of stayed judicial cases.  So the FDA must be incentivized to comply with the law and granting stays will not achieve that.

THE COURT:  Okay.  Anything else?

MR. TAYLOR:  No, Your Honor.  But I'm happy to answer any questions that you might have.

THE COURT:  Anything else from the government?

MR. GEORGIEV:  Just a couple of quick responses, Your Honor, with what Mr. Taylor said.

Currently, CBER has 29 cases in litigation.  Of those

16 are ICAN cases and about 11 are stayed.  So ICAN accounts for a significant majority of cases that CBER has to process and that are currently in litigation extending the logic that Mr. Taylor is advancing and ICAN is advancing would effectively mean that whoever is able to afford an attorney and bring a case to the court can jump the queue.  And there is no support for that in FOIA.

In fact, *Open America* specifically states that the agency in PHMPT -- I agree with Mr. Taylor on that -- that the agency will abide by court orders.  Of course, it would.  But that necessarily comes to the detriment of other requesters.  And PHMPT proves that point that *Open America* recognized.

Also the statement or the point that ICAN only requests information, but doesn't request specific records, rings hollow.  I point this Court to this specific case where ICAN is requesting specific reports.  And that is in ECF 1-1, page 2.  That is the FOIA request.  So ICAN certainly diversifies its requests and seeks not only information but it also seeks specific documents.  With that, we ask the Court to stay the -- its decision on the motion to stay and to await the decision of the D.C. Circuit.

THE COURT:  Okay.  Mr. Taylor.

MR. TAYLOR:  I would be grateful for an opportunity to respond, if possible.

THE COURT:  Yes, please.

MR. TAYLOR:  So this argument that we hear repeatedly of queue jumping and how unfair that would be rings hollow when we know they do not follow a first-in, first-out policy.  That would make sense if they actually do follow first in, first out as they represent they do.  So far the Courts have been taking them at their word at that, according to their affidavits.  But we can show you that is not what they do.  It is not first in, first out.  Therefore, these arguments are unfair because there would be queue jumping.  That is not true because they don't follow a queue.  They don't respect their own queue, so that rings hollow.

We ask for specific records, yes.  We have zero control over how many pages that those records are.  That's FDA and how it runs its bureaucracy.  If we ask for a report and the report is 500 pages long, we have no control over how many pages were in that report.  We just asked for the report, the information that the public wants to know, our audience wants to know.  And it's our obligation as a media outlet to provide that information and to try to get it as quickly as we can.

We exercise our rights under the statute.  It is not an abuse and it's not wrong for us to ask for the information.  We have a right to do so under the law.

THE COURT:  Let me ask government counsel, I think you mentioned that there were 15 or 16 ICAN cases pending in which there were 11 stays; is that right?

MR. GEORGIEV:  That's rough estimates, yes, Your Honor.

THE COURT:  What's going on in the other cases?

MR. GEORGIEV:  So my understanding is the 11 are stayed, including the one that is going on appeal.  And then in the other cases, my understanding is that there are motions pending for a stay.

THE COURT:  All right.  Well, anything else, Mr. Taylor?

MR. TAYLOR:  No, Your Honor.  Only I would ask you to respectfully to just move forward in this case, to decide on the motion and to keep this matter moving forward so that this request can at least get its fair hearing in the process.

THE COURT:  All right.  Well, I conclude that I do need some additional information to be able to make a decision about the appropriateness of the stay.

And, in particular, I do want to know what has happened with staffing levels in the past year, whether they have gone up or they have gone down with respect to the staff that is handling the complex queue.  And so I would like to know what the numbers look like as of December 31st, 2024 as compared to do today.  I would like to know what efforts are in place to hire and to bring on additional staff or contractors.  There is a reference to onboarding.  I would like to know what the status is of the onboarding.  The government's papers say

it takes a couple of years to train up staff.  And I don't doubt that it takes a couple years for someone to become expert if the field.  I also do doubt it takes a couple of years for someone to be able to process FOIA requests, particularly in a very unique setting.  I assume that people can be trained and be productive much more quickly than that.  I also would like the government's best estimate of when this case will reach the top of the queue.  And I understand that may be years out.  And also understand that the estimate may only be an estimate, but I would like to know the answer to that question.

I would like know what, if any, limits exist with respect to congressional funding of staff for processing FOIA requests at the FDA and whether requests have been made to congress with respect to FOIA requests -- what requests have been made to congress with respect to any supplemental funding to handle the barrage of FOIA requests that the agency is currently facing.

And Mr. Taylor made reference to wanting to submit evidence with respect to the first-in, first-out processes. And I would welcome any submission, Mr. Taylor, that you would want to make.  Maybe it makes sense for you to file that first and then the government can file in response, because they may want to respond to that as well with whatever additional showing is going to be required.

And so, Mr. Taylor, when would you like to make that

submission to the Court?

MR. TAYLOR:  That's a good question.  It kind of depends on our IT people and when they would be able to have -- I know they have a lot of that information already available, so we probably could do it in a relatively timely manner. Fourteen days.

THE COURT:  Okay.  All right.  Today is the 24th of November, so that would take you I think to the 8th of December; is that correct?

MR. TAYLOR:  I would -- I rely on Google to calculate dates for me, Your Honor.

MR. GEORGIEV:  December 8th, Your Honor.  Fourteen days.

THE COURT:  Okay.  And then when would the government like to file a response addressing my additional -- the additional questions that I set forth?  I realize we are heading into the holidays, which may pose some challenges.

MR. GEORGIEV:  And Your Honor would like obviously a response to whatever evidence Mr. Taylor files; is that correct?

THE COURT:  It would include any response to that as well as answer the questions that I posed to you.

MR. GEORGIEV:  Okay.  So 14 days is into -- I'm not saying 14 days yet, but that gets us into Christmas.

THE COURT:  Right.

MR. GEORGIEV:  So unless we do it in 14 days, we are looking after Christmas.  Would that be acceptable?

THE COURT:  Early January is fine.

MR. GEORGIEV:  After the holidays.

Early January.  Okay.  How about January 5th?

MR. TAYLOR:  Could we possibly make it a number of days after we submit our information?  Because I might be able to go faster than 14 days.  I just need to consult our IT people first.  It's possible I could do it in two or three.  I just don't know without talking to IT.

THE COURT:  I guess I would rather have a schedule. I find that when I set the number of days after, there end up being disputes between the parties about how you count the days.  So I would rather set a date.  And, quite frankly, I think given the world we are in here where you are number 475 in the queue, I don't think these extra days are going to be material.

MR. TAYLOR:  Fair enough.  Fair enough.

MR. GEORGIEV:  Let's do January 12th, Your Honor.

THE COURT:  I'm sorry.

MR. GEORGIEV:  Let's do January 12th.

THE COURT:  All right.  January 12th.

Are you going to file a response to that, Mr. Taylor?

MR. TAYLOR:  I'm sorry, what?

THE COURT:  Would you like an opportunity to respond

to whatever the government files?

MR. TAYLOR:  No doubt, yes.

THE COURT:  So when would you like to file that?  He is going to file the 12th of January.

MR. TAYLOR:  Right.  So another 14 days after that.

THE COURT:  The 26th of January for that.  Okay.

All right.  So what I'm going to do is treat that simply as a renewed motion.  I'm going to deny without prejudice the government's current motion.  That's not an expression of views on the motion.  I just feel like I need more information.  So I will deny it without prejudice.  But as soon as the governments make its new filing, I will treat that as a renewed motion for a stay under the present circumstances.

And, in addition, if you -- Mr. Taylor, if you can just update me with your filing just letting me know what is going on in the D.C. Circuit, that would be helpful as well.

MR. TAYLOR:  Yeah.  Absolutely.  So you want that n the same -- in that same information as the first in, first out or separately?

THE COURT:  In the same would be helpful to have that.

MR. TAYLOR:  Okay.

THE COURT:  I do have to say --

MR. GEORGIEV:  Your Honor --

THE COURT:  -- I am sympathetic to both of the

positions you have taken here, but also see some concerns in both of the positions you have taken here.  But I just, in candor, I don't really see a world in which anything has been shown to me to bump this case ahead of 479 other cases in the queue.  And you made the point that I have to consider each individually.  I don't think that's really what the D.C. Circuit has said the standard is.  And I do think I have to consider it in light of the overall burden that the agency is facing at the time.  And I don't really see a basis for saying to all of the other FOIA requesters out there, yours is going to be processed later, because this one is going -- this one, which is a substantial request is going to get bumped ahead of you and everyone else has to wait.  That's one of the concerns I had about the Texas litigation.

I understand the concerns that they are wanting to get the records there, but it has put everyone else on hold, which isn't fair.

MR. TAYLOR:  Yeah.

THE COURT:  I think I do have to consider fairness, but I also have to consider the FDA may need to devote additional resources to the extent they can to processing requests.  And so that is what my focus is on at this point.

MR. TAYLOR:  Your Honor, I think that speaks to you as an honorable person that you want to be fair to everybody. I just don't know that is what the statute requires.  I think

some of that, you know, is a question with equity.  And I don't know that all of those equity considerations come in.

THE COURT:  Let me ask you this:  I have got other cases in front of me with other entity clients other than yours where they have requested a stay.  Should I go back and revisit them and bump them ahead of you in the case in the queue?

MR. TAYLOR:  Again, I don't think that is actually the Court's role in any case.  It's not your job to manage the FDA's queue.  Your only role --

THE COURT:  But wait a second.  What am I supposed to do though?

MR. TAYLOR:  Just require compliance.  Require compliance and make it their problem.  Make it the FDA's problem what their queue is.  Make it the FDA's problem that they have these multiple requests.  It is their problem to rise up and obey the statute.

THE COURT:  I'm not going to enter an order they can't comply with; right?

MR. TAYLOR:  But the lessen of PHMPT is that they will comply if you order it.  If you will order it, they will comply.  They will do what they have to do.  They don't comply because the courts don't require them to do so.

THE COURT:  All right.  Well, let's see what the answers to my questions are and we'll see where we are going from there.

All right.  Anything else before we adjourn?

MR. TAYLOR:  Thank you, Your Honor.

MR. GEORGIEV:  One question, Your Honor.  I understand that you will deny the current motion without prejudice.  Would you like in our submission to provide arguments -- legal arguments again so that there is a full record on that specific motion?

THE COURT:  If you --

MR. GEORGIEV:  Or would you like us to just do it as responses to the Court's questions?

THE COURT:  You know, if you want to add any argument, you're welcome to do so.  If you want to simply reference the argument you have already made, that is fine too.  I don't want you to have to rebrief, which I think you have probably already had to do in multiple cases already.

MR. GEORGIEV:  Thank you, Your Honor.

THE COURT:  You don't need to do that.  For purpose of my docket management, I will want to deal with the motion that is in front of me.  But I understand that there is not a need for rebriefing something that has already been briefed.

MR. TAYLOR:  I'm sorry.  I am not hearing the Court.

THE COURT:  I am just saying, the government doesn't have to rebrief the legal issues when they renew the motion.  But I have said, if there is anything they want to add, they are welcome to and if there is anything you want to add, you

are welcome to as well.

MR. TAYLOR:  Okay.  Thank you, Your Honor.

THE COURT:  All right.  Well, thank you all.

MR. TAYLOR:  Have a great day.

THE COURT:  You too.

(Proceedings concluded at 11:51 a.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 2nd day of December, 2025.

_____
Sherry Lindsay, RPR
Official Court Reporter

**MR. GEORGIEV: [33]**   2/11 3/1 3/6 3/18 3/20 4/3 4/7 4/12 4/24 5/7 5/24 6/5 6/16 7/9 8/8 9/3 9/8 9/23 10/2 23/23 26/1 26/4 28/12 28/18 28/23 29/1 29/4 29/19 29/21 30/24 33/3 33/9 33/16
 **MR. TAYLOR: [41]**
 **THE COURT: [69]**
 **THE COURTROOM DEPUTY: [1]** 2/2

## 1

**1,000 [1]**   15/25
**1-1 [1]**   24/16
**10 [2]**   16/4 16/24
**10,000 [4]**   19/19 19/23 20/8 20/8
**100 [2]**   15/18 16/10
**10151 [1]**   1/15
**11 [3]**   24/1 25/25 26/4
**11:05 [1]**   1/7
**11:51 [1]**   34/6
**12th [4]**   29/19 29/21 29/22 30/4
**14 [5]**   28/23 28/24 29/1 29/8 30/5
**15 [1]**   25/24
**16 [2]**   24/1 25/24
**18 [3]**   7/19 7/24 8/2
**18-month [3]**   2/17 8/6 9/25
**180,000 [2]**   4/14 4/25
**19 [2]**   20/13 20/14
**1998 [1]**   17/25

## 2

**20 [6]**   8/21 16/11 16/25 17/20 19/17 19/18
**20001 [1]**   1/24
**2019 [3]**   3/11 12/18 19/1
**2024 [2]**   6/4 26/21
**2025 [2]**   1/6 35/10
**2026 [2]**   4/14 5/1
**20530 [1]**   1/19
**22 [2]**   7/22 7/24
**220 [3]**   12/19 12/21 12/25
**24 [1]**   1/6
**24th [1]**   28/7
**25-823 [1]**   3/9
**25-825 [2]**   1/4 2/3
**26th [1]**   30/6
**29 [1]**   23/25
**2nd [1]**   35/10

## 3

**31st [2]**   6/4 26/21
**333 [1]**   1/23
**350 [3]**   12/18 18/25 21/19

## 4

**405th [1]**   3/15
**475 [1]**   29/15
**479 [1]**   31/4

## 5

**500 [3]**   1/15 15/16 25/15
**552 [1]**   10/15
**5th [1]**   29/5

## 6

**601 [1]**   1/18
**6710 [1]**   1/24

## 7

**745 [1]**   1/14
**75 [4]**   15/18 16/10 16/14 16/17

## 8

**823 [1]**   3/9
**825 [2]**   1/4 2/3
**8th [2]**   28/8 28/12

## A

**a.m [2]**   1/7 34/6
**abide [1]**   24/10
**able [8]**   8/1 13/13 17/1 24/5 26/15 27/4 28/3 29/7
**about [14]**   2/19 3/20 8/5 8/6 8/24 12/17 17/5 20/12 21/13 24/1 26/16 29/5 29/13 31/14
**above [1]**   35/5
**above-entitled [1]**   35/5
**absence [1]**   18/4
**absolutely [2]**   20/18 30/17
**abuse [1]**   25/21
**accelerate [2]**   15/15 23/6
**acceptable [1]**   29/2
**accepted [1]**   22/20
**access [2]**   14/16 15/11
**according [1]**   25/6
**accountability [1]**   14/18
**accounts [1]**   24/1
**achieve [1]**   23/18
**across [1]**   12/1
**acted [1]**   23/4
**acting [1]**   23/5
**action [4]**   1/3 1/4 2/3 3/8
**actions [2]**   6/9 12/1
**actively [2]**   6/18 6/20
**actually [11]**   3/11 6/10 7/21 8/5 11/15 15/10 15/14 21/24 22/22 25/4 32/7
**add [5]**   2/24 9/7 33/11 33/24 33/25
**addition [1]**   30/14
**additional [14]**   3/21 4/4 5/22 14/21 17/23 18/3 18/13 23/1 26/15 26/23 27/23 28/15 28/16 31/21
**address [5]**   2/24 4/5 6/24 7/13 7/15
**addressing [1]**   28/15
**adjourn [1]**   33/1
**ADMINISTRATION [2]**   1/6 2/4
**advanced [1]**   4/9
**advancing [2]**   24/4 24/4
**affairs [1]**   6/12
**affect [1]**   7/7
**affects [1]**   7/5
**affidavits [2]**   21/7 25/6
**affirmatively [1]**   10/15
**afford [1]**   24/5
**after [8]**   7/24 8/6 10/22 29/2 29/4 29/7 29/12 30/5
**afterwards [1]**   8/7
**again [3]**   4/25 32/7 33/6
**age [2]**   3/10 3/10

**agencies [3]**   18/5 18/24 19/4
**agency [14]**   5/10 8/25 11/25 12/19 12/20 17/6 18/2 23/3 23/4 23/15 24/9 24/10 27/16 31/8
**agency's [1]**   23/11
**ago [1]**   6/4
**agree [2]**   18/19 24/9
**agreed [1]**   18/7
**ahead [11]**   12/21 13/9 13/10 13/13 13/15 13/23 21/15 22/12 31/4 31/12 32/6
**al [1]**   1/7
**all [28]**   2/9 2/14 2/14 6/14 9/6 10/4 10/7 11/10 11/18 13/18 14/10 15/23 16/4 16/16 16/20 17/1 21/23 26/8 26/14 28/7 29/22 30/7 31/10 32/2 32/23 33/1 34/3 34/3
**allow [1]**   11/22
**almost [3]**   4/25 10/7 15/7
**already [6]**   7/22 28/4 33/13 33/15 33/15 33/20
**also [12]**   2/12 2/21 4/22 5/14 6/21 24/13 24/19 27/3 27/6 27/9 31/1 31/20
**although [1]**   7/3
**always [1]**   17/8
**am [11]**   2/16 3/25 9/3 14/2 14/4 15/3 20/4 30/25 32/10 33/21 33/22
**amendments [1]**   17/25
**America [5]**   8/12 8/13 8/24 24/8 24/12
**another [6]**   7/24 8/2 8/2 8/6 8/21 30/5
**answer [10]**   6/5 8/9 9/1 9/2 9/5 12/8 14/3 23/20 27/10 28/22
**answers [1]**   32/24
**anticipate [1]**   3/12
**any [23]**   2/21 2/24 3/7 5/2 5/5 6/18 8/20 12/7 13/17 16/1 16/13 17/16 18/16 18/22 23/2 23/2 23/21 27/11 27/15 27/20 28/21 32/8 33/11
**anybody [1]**   17/16
**anyone [2]**   9/21 16/19
**anything [11]**   2/24 9/6 16/2 16/5 23/19 23/22 26/8 31/3 33/1 33/24 33/25
**anywhere [2]**   16/2 18/16
**appeal [11]**   9/11 9/19 10/2 10/9 10/18 10/23 11/23 12/2 12/8 12/14 26/5
**APPEARANCES [1]**   1/12
**appellate [1]**   12/5
**applies [1]**   10/17
**Appreciate [1]**   11/21
**appropriate [3]**   8/13 19/21 19/22
**appropriated [1]**   9/2
**appropriateness [1]**   26/16
**appropriations [2]**   5/15 5/16
**are [83]**
**aren't [2]**   14/9 20/11
**argument [5]**   19/25 20/5 25/1 33/12 33/13
**arguments [4]**   12/14 25/8 33/6 33/6

**A**

as [36]
aside [1]  21/16
ask [16]  11/19 12/16 13/21
 17/23 18/12 19/15 20/5 20/25
 21/13 24/19 25/12 25/14
 25/21 25/23 26/10 32/3
asked [5]  3/1 3/20 9/9 21/4
 25/16
asking [4]  15/9 18/15 20/4
 20/8
assign [1]  23/1
assume [1]  27/5
assuming [1]  21/14
attention [1]  6/7
attorney [1]  24/5
attorney's [1]  4/20
audience [2]  19/11 25/17
augment [1]  6/24
augmenting [1]  5/22
authorizes [1]  12/4
automatic [1]  10/17
available [1]  28/4
Avenue [2]  1/14 1/23
await [1]  24/20
aware [2]  9/3 13/1
away [2]  10/20 10/23
awful [1]  7/23

**B**

back [8]  6/13 6/14 6/19 6/19
 11/22 14/7 17/24 32/5
backlog [5]  7/6 23/11 23/11
 23/16 23/16
backpedal [1]  6/11
Bankruptcy [1]  1/23
barrage [1]  27/16
based [1]  12/4
basis [3]  8/12 18/9 31/9
be [53]
bearing [1]  9/15
bears [1]  14/12
because [19]  6/8 6/14 8/1
 8/23 9/24 10/18 10/20 12/13
 14/10 15/24 18/10 18/24 19/6
 25/8 25/9 27/22 29/7 31/11
 32/22
become [1]  27/2
been [9]  6/11 7/6 7/23 17/20
 25/5 27/13 27/15 31/3 33/20
before [8]  1/10 2/18 2/24
 8/3 9/18 9/25 14/13 33/1
begin [1]  15/13
beginning [1]  2/6
behind [1]  6/14
being [8]  6/13 10/21 14/25
 16/21 17/16 19/13 22/22
 29/13
benefits [1]  14/15
best [1]  27/7
better [2]  8/9 8/15
between [2]  15/18 29/13
bit [1]  6/22
blown [1]  17/17
blows [1]  22/5
Boasberg [2]  3/8 6/25
Bonomo [1]  2/13
both [5]  6/20 10/16 12/14
 30/25 31/2

breaking [1]  19/24
briefed [1]  33/20
bring [5]  6/13 6/14 6/19
 24/5 26/23
bringing [2]  4/5 5/25
broadly [1]  9/8
broke [1]  20/1
broken [1]  17/15
brought [1]  22/10
budget [1]  18/4
budgetary [1]  8/20
bump [7]  12/21 12/22 13/8
 13/10 13/23 31/4 32/6
bumped [2]  21/15 31/12
burden [4]  10/17 10/19 14/13
 31/8
bureaucracy [1]  25/14

**C**

calculate [1]  28/10
calculations [1]  7/22
can [22]  3/3 5/9 5/10 6/6
 6/23 7/12 7/21 11/6 15/14
 17/7 19/16 20/5 21/7 23/6
 24/6 25/7 25/19 26/13 27/5
 27/22 30/14 31/21
can't [4]  11/17 19/8 19/18
 32/18
candor [1]  31/3
cannot [1]  18/9
capabilities [1]  6/24
capacity [1]  6/20
case [25]  3/7 3/7 3/11 3/14
 4/19 4/22 10/24 11/23 11/24
 12/6 12/7 12/9 13/18 14/5
 15/16 18/8 18/14 20/21 24/6
 24/15 26/11 27/7 31/4 32/6
 32/8
cases [19]  2/18 3/16 4/10
 12/1 14/20 15/23 16/3 18/16
 23/12 23/17 23/25 24/1 24/2
 25/24 26/3 26/6 31/4 32/4
 33/15
CBER [2]  23/25 24/2
certain [1]  20/22
certainly [9]  4/9 6/23 6/23
 8/14 10/2 11/7 21/1 21/3
 24/17
certify [1]  35/3
challenges [1]  28/17
chance [1]  10/5
change [2]  13/5 13/20
Chief [2]  3/8 6/25
choice [1]  18/12
Christmas [2]  28/24 29/2
Circuit [13]  8/12 8/23 9/15
 9/22 10/1 11/4 11/11 11/14
 11/18 18/7 24/21 30/16 31/7
circumstances [3]  10/16
 18/10 30/13
civil [4]  1/4 1/18 2/2 3/8
client [1]  14/1
clients [2]  15/10 32/4
close [2]  9/25 16/5
COLUMBIA [1]  1/1
come [3]  8/1 16/5 32/2
comes [1]  24/11
compare [1]  6/2
compared [2]  13/12 26/22
complaint [1]  18/5

complete [1]  15/18
completed [1]  4/19
complex [10]  3/16 3/22 5/3
 5/8 5/8 5/12 6/2 6/3 7/15
 26/20
compliance [6]  7/14 14/18
 17/13 23/14 32/12 32/13
comply [14]  16/2 17/7 17/10
 17/21 17/22 18/3 18/6 18/15
 18/18 23/17 32/18 32/20
 32/21 32/21
complying [1]  18/1
concern [4]  6/8 6/8 6/16 8/9
concerned [1]  17/5
concerning [2]  6/12 6/15
concerns [3]  31/1 31/13
 31/15
conclude [1]  26/14
concluded [1]  34/6
conclusion [1]  8/15
confer [1]  9/4
confirm [1]  5/9
confirms [2]  15/14 23/6
conflict [1]  15/8
congress [18]  9/1 11/1 12/2
 17/22 17/23 17/25 18/2 18/5
 18/11 18/12 18/15 18/18
 19/20 19/22 20/8 21/4 27/14
 27/15
congressional [2]  8/20 27/12
congressionally [1]  8/24
CONSENT [2]  1/3 2/3
consequences [1]  14/9
consider [6]  9/16 13/15 31/5
 31/8 31/19 31/20
consideration [1]  9/10
considerations [1]  32/2
considered [1]  19/6
consistent [2]  10/11 18/11
consistently [2]  17/18 22/19
constitutes [1]  35/4
Constitution [1]  1/23
consult [2]  13/25 29/8
continue [1]  4/13
continued [3]  5/16 5/17
 12/11
continues [1]  12/12
contract [1]  4/16
contracting [1]  6/21
contractors [6]  3/23 4/2 4/4
 4/17 5/4 26/23
contrary [1]  10/7
control [5]  20/15 20/19
 20/23 25/13 25/15
convert [1]  23/10
correct [7]  3/17 3/18 4/3
 13/7 28/9 28/20 35/4
could [13]  8/1 9/16 9/24
 10/23 11/6 13/24 16/6 16/14
 16/20 21/11 28/5 29/6 29/9
counsel [4]  2/5 15/1 16/15
 25/23
count [1]  29/13
country [1]  18/22
couple [4]  23/23 27/1 27/2
 27/3
course [1]  24/10
court [33]  1/1 1/22 1/22
 5/18 7/1 7/19 9/18 10/9
 10/10 10/13 10/21 10/23

**C**

court... [21]  10/24 11/14
 11/14 15/9 15/24 16/9 17/8
 17/11 17/12 21/10 21/15 22/6
 23/10 24/6 24/10 24/15 24/19
 28/1 33/21 35/3 35/13
Court's [4]  6/7 21/24 32/8
 33/10
courts [5]  1/23 14/13 22/20
 25/5 32/22
COVID [2]  20/13 20/14
COVID-19 [2]  20/13 20/14
creates [1]  20/24
current [2]  30/9 33/4
currently [7]  3/14 3/21 6/2
 12/7 23/25 24/3 27/17

**D**

D.C [9]  8/12 8/23 9/14 9/22
 9/25 11/3 24/21 30/16 31/6
data [1]  21/8
date [3]  4/8 10/22 29/14
Dated [1]  35/10
dates [1]  28/11
day [3]  14/21 34/4 35/10
days [14]  16/12 19/17 19/18
 28/6 28/13 28/23 28/24 29/1
 29/7 29/8 29/12 29/14 29/16
 30/5
DC [3]  1/5 1/19 1/24
dead [1]  16/16
deadlines [5]  10/12 17/17
 18/7 22/4 22/5
deal [1]  33/18
December [5]  6/4 26/21 28/9
 28/12 35/10
December 31st [1]  6/4
December 8th [1]  28/12
decide [3]  10/22 21/18 26/11
decides [1]  8/25
decision [6]  10/1 18/10
 18/17 24/20 24/21 26/15
decrease [1]  6/9
dedicate [1]  7/12
dedicated [2]  7/14 8/17
dedicating [1]  4/15
Defendant [1]  1/17
defendants [2]  1/8 11/25
defer [1]  10/13
delay [10]  10/14 11/1 12/11
 14/10 14/15 14/19 14/20
 18/12 18/18 23/10
delaying [1]  12/13
demonstrate [1]  10/16
denied [1]  18/6
deny [4]  10/10 30/8 30/11
 33/4
depends [1]  28/3
deprioritize [1]  13/11
deprivation [1]  14/19
designed [2]  12/3 17/18
detail [1]  23/1
determination [1]  16/11
detriment [1]  24/11
development [1]  4/18
devote [1]  31/20
devoted [2]  4/23 4/25
didn't [2]  6/14 20/2
difference [2]  3/10 17/20

different [6]  4/10 12/9
 12/10 12/10 12/24 17/19
differs [3]  3/7 12/6 12/9
diligence [7]  10/16 22/17
 22/17 22/21 22/23 22/23 23/9
diligently [2]  23/4 23/5
Dimitar [2]  1/17 2/11
direct [1]  9/15
directed [1]  17/7
directs [1]  10/12
disclosure [2]  10/13 14/21
disputes [1]  29/13
DISTRICT [7]  1/1 1/1 1/11
 1/23 4/13 6/25 8/18
diversifies [1]  24/18
Division [1]  1/18
do [54]
docket [1]  33/18
document [3]  19/17 20/5
 20/16
documents [15]  15/17 15/21
 16/5 16/10 16/16 16/18 16/20
 16/24 17/4 20/11 20/18 20/19
 20/23 22/12 24/19
does [8]  7/23 10/19 12/8
 14/14 15/4 16/12 17/6 22/23
doesn't [4]  3/9 23/10 24/14
 33/22
doing [4]  4/22 6/23 17/20
 21/16
DOJ [1]  1/17
DOJ-USAO [1]  1/17
don't [31]  4/7 5/8 5/24 6/5
 7/9 11/5 11/8 13/9 13/13
 13/15 14/3 14/5 19/5 21/9
 21/14 22/21 25/9 25/10 27/1
 29/10 29/16 31/3 31/6 31/9
 31/25 32/1 32/7 32/21 32/22
 33/14 33/17
done [5]  16/5 16/6 22/6 22/7
 22/7
doubt [3]  27/2 27/3 30/2
down [3]  16/25 16/25 26/19
dramatically [2]  15/14 23/6
DRUG [2]  1/6 2/4
due [7]  10/16 22/17 22/17
 22/21 22/23 22/23 23/9
during [1]  5/16

**E**

each [2]  14/20 31/5
early [3]  10/3 29/3 29/5
easily [1]  8/1
ECF [1]  24/16
effectively [1]  24/4
efforts [5]  6/13 6/15 22/25
 23/2 26/22
eight [7]  3/23 3/23 4/1 4/2
 4/3 5/4 5/4
either [1]  10/10
Elizabeth [1]  2/12
else [9]  9/6 13/9 21/16
 23/19 23/22 26/8 31/13 31/16
 33/1
else's [1]  22/12
elsewhere [1]  10/21
employees [1]  5/22
encourage [1]  11/8
encouraging [1]  11/10
end [3]  7/20 9/25 29/12

enforce [1]  10/11
enforcement [4]  17/13 22/6
 23/12 23/14
enough [2]  29/18 29/18
ensure [1]  14/13
enter [2]  7/19 32/17
entire [1]  14/17
entirely [2]  5/9 7/4
entitled [1]  35/5
entity [2]  21/18 32/4
equity [2]  32/1 32/2
equivalent [1]  4/16
especially [1]  14/22
estimate [7]  7/20 7/25 8/5
 8/15 27/7 27/9 27/9
estimated [1]  15/17
estimates [1]  26/1
et [1]  1/7
even [6]  6/10 11/6 13/4 16/1
 16/3 21/13
ever [3]  13/20 16/1 19/5
every [3]  11/24 19/17 20/5
everybody [1]  31/24
everyone [2]  31/13 31/16
everything [1]  20/2
evidence [4]  18/14 18/14
 27/19 28/19
evidentiary [1]  21/10
exactly [2]  9/12 17/23
example [2]  20/12 20/21
exceptional [2]  10/16 18/10
exclusive [1]  5/9
exclusively [2]  4/25 5/6
excuse [1]  23/10
excuses [1]  21/3
exemption [1]  5/21
exercise [2]  22/8 25/20
exercising [2]  19/10 23/9
exist [1]  27/11
existence [1]  12/4
expedited [2]  10/1 11/7
expedition [4]  9/22 11/3
 11/10 11/11
experience [1]  21/5
expert [1]  27/2
expression [1]  30/10
extended [1]  4/15
extending [1]  24/3
extensive [1]  5/14
extent [1]  31/21
extra [1]  29/16
extraordinary [4]  6/24 7/13
 7/13 15/6

**F**

facing [2]  27/17 31/9
fact [1]  24/8
fair [7]  11/20 11/20 26/13
 29/18 29/18 31/17 31/24
fairly [2]  5/14 13/13
fairness [2]  21/23 31/19
far [3]  10/23 14/1 25/5
faster [3]  11/14 23/2 29/8
FDA [36]
FDA's [5]  2/16 21/25 32/9
 32/13 32/14
feel [1]  30/10
fees [1]  4/20
Fiduccia [1]  18/8
field [1]  27/3

**F**

**Fifth [1]**  1/14
**file [6]**  27/21 27/22 28/15
 29/23 30/3 30/4
**filed [1]**  12/18
**files [3]**  9/13 28/19 30/1
**filing [3]**  11/23 30/12 30/15
**find [2]**  9/12 29/12
**fine [3]**  13/12 29/3 33/13
**firm [3]**  15/3 18/22 18/23
**first [35]**  3/6 8/11 8/12
 10/8 11/22 13/4 13/4 13/19
 13/19 21/6 21/6 21/11 21/12
 21/14 21/14 22/10 22/10
 22/16 22/16 22/20 22/20
 22/22 22/22 25/3 25/3 25/4
 25/4 25/7 25/8 27/19 27/19
 27/21 29/9 30/18 30/18
**first-in [4]**  21/6 22/20 25/3
 27/19
**first-out [4]**  21/6 22/20
 25/3 27/19
**five [3]**  15/21 15/25 16/16
**fixed [1]**  17/19
**focus [4]**  5/8 5/11 5/13
 31/22
**focusing [1]**  19/3
**FOIA [49]**
**folks [1]**  6/19
**follow [10]**  5/19 6/6 21/6
 21/11 21/14 22/7 22/19 25/3
 25/4 25/10
**followed [1]**  22/23
**following [1]**  22/15
**FOOD [2]**  1/6 2/3
**forcing [2]**  12/2 19/4
**foregoing [1]**  35/4
**form [3]**  16/13 17/17 18/9
**forth [1]**  28/16
**forward [3]**  10/10 26/11
 26/12
**four [1]**  3/1
**Fourteen [2]**  28/6 28/12
**frankly [3]**  15/7 21/5 29/14
**freeze [2]**  5/21 11/23
**front [3]**  4/10 32/4 33/19
**frustrate [1]**  12/14
**frustrating [1]**  15/10
**full [2]**  4/16 33/6
**full-time [1]**  4/16
**fully [2]**  18/3 18/15
**function [1]**  19/8
**functionally [1]**  10/25
**funding [3]**  18/11 27/12
 27/15
**funds [2]**  9/2 18/13
**Further [1]**  19/13
**future [1]**  10/22

**G**

**general [2]**  5/12 23/5
**generally [2]**  5/3 8/11
**Georgiev [3]**  1/17 2/12 2/23
**Georgiev-Remmel [1]**  1/17
**get [16]**  2/24 6/6 8/1 8/3
 9/4 11/13 15/10 16/22 16/24
 17/19 21/19 21/22 25/19
 26/13 31/12 31/16
**gets [3]**  15/24 21/25 28/24

**give [4]**  2/20 3/3 10/5 11/25
**given [2]**  6/12 29/15
**gives [2]**  19/12 22/4
**GLIMSTAD [1]**  1/14
**go [11]**  3/4 10/20 11/13
 17/22 18/18 19/19 19/21 22/5
 23/2 29/8 32/5
**going [29]**  7/5 7/25 11/18
 11/22 13/5 13/8 14/7 16/17
 16/25 16/25 17/1 18/15 19/21
 20/7 22/25 26/3 26/5 27/24
 29/16 29/23 30/4 30/7 30/8
 30/16 31/10 31/11 31/12
 32/17 32/24
**gone [4]**  16/4 21/4 26/19
 26/19
**good [9]**  2/9 2/10 2/11 2/14
 9/1 9/2 11/16 23/12 28/2
**Google [1]**  28/10
**got [4]**  12/16 19/24 20/3
 32/3
**government [18]**  3/13 5/21
 6/22 10/15 13/2 14/12 14/16
 14/18 17/17 19/14 21/2 22/5
 23/22 25/23 27/22 28/14 30/1
 33/22
**government's [7]**  2/16 2/23
 3/9 10/19 26/25 27/7 30/9
**government-wide [1]**  5/21
**governments [1]**  30/12
**grant [5]**  10/10 10/25 11/14
 11/18 22/18
**granted [1]**  15/6
**granting [2]**  23/14 23/18
**grateful [1]**  24/23
**great [1]**  34/4
**guarantee [1]**  15/22
**guess [2]**  9/12 29/11
**guidance [1]**  9/17

**H**

**had [8]**  3/1 5/14 5/18 8/9
 9/9 13/17 31/14 33/15
**handful [1]**  19/6
**handle [1]**  27/16
**handled [1]**  15/22
**handling [1]**  26/20
**happen [1]**  17/24
**happened [2]**  7/10 26/18
**happy [6]**  2/20 2/21 2/21
 5/19 11/15 23/20
**hardship [1]**  14/14
**harm [1]**  12/10
**has [33]**  4/15 5/20 6/11 7/1
 7/23 8/12 10/12 10/23 12/18
 13/2 14/8 16/5 17/3 18/6
 19/17 19/24 20/6 20/6 21/18
 21/20 21/21 22/18 22/23
 22/25 23/4 23/25 24/2 26/17
 31/3 31/7 31/13 31/16 33/20
**hasn't [1]**  9/1
**have [77]**
**haven't [2]**  16/6 21/4
**he [2]**  7/12 30/3
**head [1]**  14/6
**heading [1]**  28/17
**hear [5]**  2/20 2/21 10/4 20/2
 25/1
**hearing [5]**  1/10 4/1 21/11
 26/13 33/21

**heavy [1]**  14/12
**help [2]**  4/5 4/11
**helpful [4]**  8/4 9/16 30/16
 30/20
**helping [1]**  17/3
**here [14]**  2/16 7/5 9/16
 10/17 10/21 11/10 14/14
 17/14 22/2 22/17 23/8 29/15
 31/1 31/2
**hire [7]**  8/25 9/2 19/19
 19/22 20/8 23/1 26/23
**hired [3]**  7/6 7/10 7/15
**hiring [3]**  5/21 6/21 8/21
**history [1]**  17/14
**hold [1]**  31/16
**holidays [2]**  28/17 29/4
**hollow [5]**  12/23 21/4 24/15
 25/2 25/11
**honor [41]**
**Honor's [1]**  10/8
**honorable [2]**  1/10 31/24
**honored [1]**  17/16
**hope [1]**  8/14
**how [18]**  5/24 6/1 7/4 9/15
 10/8 12/2 15/20 17/18 20/14
 20/17 20/17 20/19 25/2 25/13
 25/14 25/15 29/5 29/13
**However [1]**  23/3
**humanly [1]**  20/7
**hundred [2]**  15/21 15/25

**I**

**I'm [21]**  2/20 2/21 2/21 3/25
 4/21 5/19 7/4 7/7 9/3 13/7
 14/5 22/9 22/13 23/20 28/23
 29/20 29/24 30/7 30/8 32/17
 33/21
**ICAN [16]**  2/7 2/8 9/13 12/12
 12/18 14/23 14/23 19/10 23/1
 24/1 24/1 24/4 24/13 24/16
 24/17 25/24
**ICAN's [1]**  22/2
**identified [2]**  5/3 5/18
**imbalance [1]**  14/15
**important [7]**  6/17 12/21
 12/24 12/25 13/5 13/22 14/5
**impose [1]**  14/14
**imposed [1]**  8/24
**impossible [3]**  17/8 17/9
 17/10
**inadequate [1]**  18/9
**incentivized [1]**  23/17
**include [1]**  28/21
**including [2]**  20/7 26/5
**increase [1]**  6/20
**indicate [1]**  7/18
**indication [1]**  13/18
**individually [1]**  31/6
**individuals [4]**  5/2 6/1 6/3
 7/16
**inequity [1]**  14/14
**inform [1]**  18/2
**informal [1]**  11/25
**information [15]**  14/22 18/4
 19/11 20/12 22/3 24/14 24/18
 25/17 25/19 25/21 26/15 28/4
 29/7 30/11 30/18
**INFORMED [2]**  1/3 2/3
**initially [1]**  15/16
**initiatives [1]**  18/5

**I**

injury [1]   14/20
instructive [1]   17/14
interest [2]   15/8 21/21
interrupt [1]   22/9
involves [1]   12/9
involving [2]   11/24 12/13
is [179]
isn't [3]   15/4 16/17 31/17
issue [2]   3/14 4/19
issued [1]   7/11
issues [4]   9/12 9/13 9/13
 33/23
it [69]
it's [26]   3/11 4/3 5/9 5/21
 6/19 7/15 10/1 11/13 11/15
 12/24 14/24 15/15 17/7 17/7
 17/8 17/9 17/10 18/23 19/10
 21/23 22/22 23/4 25/18 25/21
 29/9 32/8
its [20]   5/22 6/20 6/24 7/12
 9/13 10/12 14/9 17/17 18/8
 19/10 19/11 21/19 22/4 23/12
 23/15 24/18 24/20 25/14
 26/13 30/12
itself [1]   8/25

**J**

January [8]   29/3 29/5 29/5
 29/19 29/21 29/22 30/4 30/6
January 12th [3]   29/19 29/21
 29/22
January 5th [1]   29/5
job [1]   32/8
Johnson [2]   20/13 20/14
joint [1]   5/10
judge [5]   1/11 3/8 6/25 8/2
 21/24
judges [1]   15/23
judicial [2]   23/11 23/16
judicially [2]   15/15 23/7
jump [4]   2/22 13/13 13/14
 24/6
jumping [3]   13/3 25/2 25/9
just [29]   2/21 4/23 7/3 7/7
 7/15 7/16 9/8 11/9 11/9 14/5
 14/10 15/24 16/13 19/20 20/4
 20/15 23/23 25/16 26/11 29/8
 29/10 30/10 30/15 30/15 31/2
 31/25 32/12 33/9 33/22
justification [1]   18/1

**K**

keep [2]   8/21 26/12
kind [3]   15/7 22/16 28/2
knock [1]   16/6
know [40]
knowledge [1]   9/23

**L**

lack [1]   17/25
Landis [1]   14/12
language [1]   18/8
lapse [2]   5/15 5/16
lapsed [1]   10/12
last [2]   4/9 17/20
later [2]   9/13 31/11
law [4]   18/22 23/12 23/17
 25/22

leads [1]   17/13
learned [1]   29/13
least [2]   19/21 26/13
left [1]   7/14
legal [5]   10/20 12/5 12/14
 33/6 33/23
lengthy [1]   5/15
less [1]   6/4
lessen [1]   32/19
lesson [1]   17/13
Let [8]   10/4 12/16 13/21
 15/13 19/15 21/13 25/23 32/3
let's [4]   7/24 29/19 29/21
 32/23
letting [1]   30/15
level [1]   11/15
levels [1]   26/18
liberty [1]   14/2
licensing [2]   20/13 20/22
lifespan [1]   10/24
lifetimes [1]   16/21
light [3]   2/18 10/9 31/8
like [22]   3/3 6/23 7/15 7/23
 18/22 19/17 20/20 26/20
 26/21 26/22 26/24 27/6 27/10
 27/11 27/25 28/15 28/18
 29/25 30/3 30/10 33/5 33/9
limiting [1]   20/4
limits [1]   27/11
Lindsay [3]   1/22 35/3 35/12
litigated [1]   10/21
litigation [16]   2/18 7/4 7/5
 7/7 7/17 11/23 13/3 15/1
 15/7 15/13 15/14 15/24 23/6
 23/25 24/3 31/14
little [3]   6/4 6/22 12/23
LLP [1]   1/14
logic [1]   24/3
logical [2]   19/24 22/16
long [1]   25/15
longer [2]   6/22 10/23
look [1]   26/21
looking [1]   29/2
loses [1]   14/16
lot [2]   7/24 28/4
lots [1]   15/12
love [1]   21/9

**M**

made [11]   6/13 14/25 15/6
 16/11 17/24 23/1 27/13 27/15
 27/18 31/5 33/13
magnitude [1]   17/9
majority [1]   24/2
make [14]   3/25 18/23 22/2
 22/14 22/15 25/4 26/15 27/21
 27/25 29/6 30/12 32/13 32/13
 32/14
makes [2]   9/19 27/21
making [1]   18/17
manage [2]   21/24 32/8
management [2]   18/5 33/18
manner [3]   14/10 19/13 28/5
many [9]   5/25 15/21 17/3
 17/8 20/14 20/17 20/19 25/13
 25/15
Mark [2]   1/13 2/8
material [2]   12/7 29/17
materially [1]   12/8
matter [9]   2/3 2/7 4/23 5/5

 5/8 16/17 23/9 26/12 35/5
matters [3]   4/22 5/6 14/22
may [9]   7/5 7/20 9/20 12/22
 27/8 27/9 27/22 28/17 31/20
Maybe [1]   27/21
me [21]   2/12 6/15 8/1 8/4
 10/4 12/16 12/17 13/21 15/5
 15/13 16/15 19/15 21/13
 25/23 28/11 30/15 30/15 31/4
 32/3 32/4 33/19
mean [8]   9/12 11/8 15/4
 15/21 15/25 16/6 16/22 24/5
meaningful [1]   3/7
means [1]   8/5
mechanism [1]   12/1
media [3]   14/23 14/23 25/18
meet [1]   18/13
members [1]   21/17
mentioned [1]   25/24
merely [1]   10/20
merits [1]   9/14
message [1]   20/3
might [4]   12/20 13/10 23/21
 29/7
million [2]   16/24 20/22
millions [2]   19/1 19/1
minute [2]   3/2 5/19
moment [2]   3/24 4/20
money [2]   19/21 19/22
month [6]   2/17 4/14 5/1 8/6
 9/25 15/16
months [6]   7/19 7/22 7/24
 7/25 8/2 8/6
more [17]   4/9 5/3 9/8 9/20
 11/15 12/18 12/24 13/5 13/22
 14/4 15/22 15/22 18/11 21/5
 21/20 27/6 30/11
morning [4]   2/9 2/10 2/11
 2/14
MOSS [1]   1/10
motion [14]   2/16 2/23 9/18
 10/11 24/20 26/12 30/8 30/9
 30/10 30/13 33/4 33/7 33/18
 33/23
motions [1]   26/6
move [2]   10/10 26/11
moving [3]   11/10 11/11 26/12
Mr [2]   2/23 9/21
Mr. [12]   10/5 23/24 24/4
 24/9 24/22 26/9 27/18 27/20
 27/25 28/19 29/23 30/14
Mr. Taylor [12]   10/5 23/24
 24/4 24/9 24/22 26/9 27/18
 27/20 27/25 28/19 29/23
 30/14
much [6]   3/13 4/9 7/4 8/15
 15/24 27/6
multiple [3]   12/1 32/15
 33/15
must [5]   10/15 13/4 14/13
 17/21 23/17
my [15]   4/24 5/7 5/11 6/8
 6/8 7/21 9/23 13/21 14/6
 26/4 26/6 28/15 31/22 32/24
 33/18

**N**

name [1]   2/5
narrow [1]   10/14
necessarily [2]   11/11 24/11

**N**

**necessary [1]**  18/6
**need [11]**  8/2 9/4 12/12
 17/22 19/3 26/15 29/8 30/10
 31/20 33/17 33/20
**needed [1]**  18/3
**NETWORK [2]**  1/3 2/3
**never [4]**  13/17 16/1 16/5
 19/21
**new [3]**  1/15 4/18 30/12
**news [3]**  14/23 14/24 19/11
**nine [1]**  4/15
**Ninth [1]**  18/7
**no [18]**  1/4 10/17 11/7 12/24
 16/19 16/23 18/13 18/14
 20/18 20/23 22/13 23/13
 23/14 23/20 24/6 25/15 26/10
 30/2
**normal [2]**  7/8 10/24
**North [1]**  4/13
**Northern [3]**  6/25 7/16 8/18
**not [66]**
**nothing [3]**  12/3 22/7 22/7
**November [2]**  1/6 28/8
**now [6]**  2/20 3/3 7/5 12/6
 14/12 16/16
**number [14]**  2/19 3/15 5/24
 6/1 6/3 6/9 7/16 20/11 20/16
 20/18 21/8 29/6 29/12 29/15
**numbers [1]**  26/21
**NW [2]**  1/18 1/23
**NY [1]**  1/15

**O**

**obey [1]**  32/16
**obligation [3]**  20/6 21/17
 25/18
**obtaining [1]**  10/19
**obtains [1]**  14/13
**obviously [6]**  2/17 6/21
 11/17 12/2 20/10 28/18
**occasion [1]**  17/12
**October [2]**  4/14 5/1
**October 1 [1]**  4/14
**October 2026 [1]**  5/1
**odd [1]**  11/9
**off [3]**  14/6 16/6 23/15
**office [1]**  8/10
**Official [3]**  1/22 35/3 35/13
**oh [2]**  5/19 16/23
**Okay [15]**  3/6 3/19 4/11 5/2
 9/6 10/4 23/19 24/22 28/7
 28/14 28/23 29/5 30/6 30/22
 34/2
**onboarded [1]**  4/6
**onboarding [5]**  3/23 4/3 4/7
 26/24 26/25
**Once [1]**  10/12
**one [22]**  3/22 3/22 4/1 4/18
 5/4 5/19 9/8 10/8 10/14 11/8
 11/23 12/20 12/23 13/5 15/5
 22/10 22/18 26/5 31/11 31/11
 31/13 33/3
**ones [4]**  14/1 14/2 14/6 16/1
**ongoing [1]**  4/7
**only [13]**  3/10 4/19 6/18
 10/14 14/15 14/19 23/12
 23/14 24/13 24/18 26/10 27/9
 32/9

**open [6]**  8/12 8/13 8/24
 12/20 24/8 24/12
**operate [2]**  5/16 12/3
**operation [4]**  5/15 7/12
 20/17 20/24
**operational [3]**  8/10 8/16
 8/16
**opinion [1]**  9/14
**opportunity [4]**  19/5 21/10
 24/23 29/25
**opposing [1]**  16/15
**option [1]**  11/13
**order [8]**  3/2 4/13 5/19
 21/15 22/18 32/17 32/20
 32/20
**ordered [1]**  16/2
**ordering [1]**  22/11
**orders [5]**  6/24 7/11 7/13
 17/12 24/10
**ordinary [1]**  19/4
**organization [1]**  16/20
**other [20]**  2/18 4/22 5/6
 5/20 11/9 12/21 12/25 13/11
 13/14 15/10 21/17 21/17
 24/11 26/3 26/6 31/4 31/10
 32/3 32/4 32/4
**others [3]**  13/23 14/5 17/9
**our [22]**  9/11 9/17 12/21
 12/25 13/11 13/20 15/3 18/16
 20/10 20/11 20/15 21/5 21/8
 22/2 22/8 25/17 25/18 25/20
 28/3 29/7 29/8 33/5
**out [22]**  6/17 8/12 9/12 13/4
 13/19 18/9 19/4 19/19 21/6
 21/12 21/14 22/10 22/16
 22/20 22/22 25/3 25/4 25/8
 27/8 27/19 30/18 31/10
**outcome [2]**  9/10 9/18
**outlet [1]**  25/18
**outside [1]**  14/21
**over [4]**  20/19 20/23 25/13
 25/15
**overall [1]**  31/8
**overlapping [2]**  10/20 12/14
**overwhelming [2]**  19/4 19/7
**own [7]**  13/8 13/10 13/15
 14/9 21/5 21/8 25/10

**P**

**page [1]**  24/17
**pages [11]**  4/14 4/17 5/1
 15/16 15/21 15/25 16/24 19/2
 25/13 25/15 25/16
**papers [2]**  7/18 26/25
**parallel [1]**  11/24
**part [4]**  18/20 19/2 19/8
 23/2
**partially [1]**  18/24
**particular [2]**  14/3 26/17
**particularly [1]**  27/4
**parties [3]**  9/11 14/11 29/13
**parties' [1]**  9/9
**past [5]**  7/1 7/2 17/17 22/5
 26/18
**patently [1]**  14/11
**pathway [1]**  10/14
**pending [10]**  7/23 9/10 9/18
 9/18 10/9 12/4 12/19 12/25
 25/24 26/7
**people [18]**  4/21 5/5 6/9

 6/12 7/6 8/22 9/1 9/2 16/15
 19/2 19/19 19/23 20/8 20/9
 21/3 27/5 28/3 29/9
**per [3]**  4/14 5/1 15/16
**perhaps [4]**  6/11 10/6 13/15
 13/17
**period [4]**  7/22 8/15 9/25
 14/21
**permit [1]**  23/10
**person [1]**  31/24
**personally [1]**  15/3
**perspective [2]**  9/17 13/21
**PHMPT [18]**  4/12 4/18 4/22
 4/25 5/5 5/12 5/13 7/10 7/11
 8/18 15/13 17/6 17/13 23/5
 23/13 24/9 24/12 32/19
**PHMPT-1 [2]**  4/18 7/11
**PHMPT-2 [7]**  4/12 4/22 4/25
 5/5 5/13 7/10 8/18
**place [1]**  26/23
**plaintiff [4]**  1/4 1/13 2/6
 2/7
**please [4]**  2/5 3/5 20/25
 24/25
**point [15]**  11/20 11/21 12/6
 14/17 15/8 18/23 19/24 20/3
 22/14 22/15 24/12 24/13
 24/15 31/5 31/22
**pointed [1]**  18/9
**policy [5]**  18/11 18/17 21/6
 22/20 25/3
**pose [1]**  28/17
**posed [1]**  28/22
**position [8]**  3/9 7/20 9/9
 9/11 10/7 13/2 19/9 19/16
**positioned [1]**  18/23
**positions [3]**  6/19 31/1 31/2
**possible [3]**  20/7 24/24 29/9
**possibly [1]**  29/6
**postpones [1]**  14/18
**Postponing [1]**  14/17
**practice [1]**  16/9
**prefer [1]**  3/3
**prejudice [3]**  30/9 30/11
 33/5
**prepared [1]**  2/20
**present [2]**  21/10 30/13
**pressure [1]**  23/15
**pretty [1]**  9/24
**previously [1]**  8/17
**principle [2]**  15/5 20/5
**prioritize [1]**  14/1
**priority [1]**  21/22
**probably [6]**  13/1 15/23
 16/21 18/23 28/5 33/15
**problem [8]**  15/5 19/2 19/8
 20/24 32/13 32/14 32/14
 32/15
**problems [1]**  18/20
**procedural [1]**  11/25
**proceed [1]**  10/9
**proceedings [2]**  34/6 35/5
**process [12]**  4/17 5/17 8/22
 8/22 10/3 13/14 17/5 19/23
 20/9 24/2 26/13 27/4
**processed [3]**  7/21 21/20
 31/11
**processes [1]**  27/19
**processing [8]**  3/13 6/10 7/8
 8/11 8/11 8/13 27/12 31/21

**P**

**produce [4]** 16/4 16/10 16/18 22/11
**produced [2]** 14/9 21/25
**producing [2]** 4/13 12/10
**product [2]** 8/10 15/20
**production [6]** 4/18 12/13 15/15 15/19 17/10 23/7
**productive [1]** 27/6
**promptly [1]** 20/7
**proof [1]** 23/3
**proposed [1]** 15/16
**proves [1]** 24/12
**provide [5]** 9/16 19/17 19/18 25/18 33/5
**provided [1]** 16/3
**provides [1]** 4/16
**province [1]** 18/24
**public [4]** 14/16 14/22 21/17 25/17
**purpose [4]** 12/15 14/24 21/1 33/17
**pursuing [1]** 3/21
**pushing [1]** 14/21
**put [3]** 5/10 15/23 31/16
**putting [1]** 21/16

**Q**

**question [15]** 3/6 3/20 6/6 9/5 9/21 11/22 12/16 14/3 19/15 20/25 22/25 27/10 28/2 32/1 33/3
**questions [13]** 2/19 2/22 2/25 3/2 5/18 10/8 10/20 12/5 23/21 28/16 28/22 32/24 33/10
**queue [30]** 3/12 3/15 3/16 4/5 5/3 5/6 5/12 5/12 6/2 6/3 7/15 12/22 13/3 13/6 13/9 13/20 21/16 21/25 24/6 25/2 25/9 25/10 25/10 26/20 27/8 29/16 31/5 32/6 32/9 32/14
**quick [1]** 23/23
**quickly [3]** 21/20 25/19 27/6
**quite [4]** 7/4 13/12 14/15 29/14
**quoted [1]** 18/8

**R**

**raises [1]** 12/5
**RANDOLPH [1]** 1/10
**rather [4]** 18/12 18/18 29/11 29/14
**reach [1]** 27/7
**realistic [1]** 16/12
**realities [3]** 8/10 8/16 8/16
**reality [2]** 16/14 22/21
**realize [1]** 28/16
**really [7]** 8/23 12/20 12/24 19/3 31/3 31/6 31/9
**reasonable [1]** 21/2
**rebrief [2]** 33/14 33/23
**rebriefing [1]** 33/20
**receive [1]** 19/12
**received [2]** 5/20 13/18
**recognized [6]** 7/1 7/1 7/2 8/13 16/10 24/12
**record [4]** 2/5 18/16 33/7

**records [16]** 9/17 6/10 7/21 8/11 12/10 12/12 14/9 14/17 18/2 19/2 19/23 20/14 24/14 25/12 25/13 31/16
**reference [3]** 26/24 27/18 33/13
**reforms [1]** 23/2
**relatively [1]** 28/5
**relied [4]** 20/13 20/15 20/21 21/1
**relief [1]** 10/25
**rely [1]** 28/10
**remain [1]** 12/19
**remaining [1]** 4/19
**remarks [1]** 2/21
**Remmel [1]** 1/17
**renders [1]** 10/1
**renew [1]** 33/23
**renewed [2]** 30/8 30/13
**repeatedly [2]** 13/2 25/1
**report [7]** 5/10 6/6 6/17 25/14 25/15 25/16 25/16
**Reporter [4]** 1/22 1/22 35/3 35/13
**reports [1]** 24/16
**represent [3]** 5/9 21/7 25/5
**representations [1]** 13/6
**represented [1]** 17/8
**request [30]** 3/10 3/11 3/13 3/14 7/23 10/22 11/6 12/9 12/13 13/12 13/22 14/8 14/8 16/1 16/17 18/10 19/6 19/16 20/9 20/11 21/19 22/2 22/24 23/4 23/5 23/9 24/14 24/17 26/13 31/12
**requested [7]** 7/19 15/21 16/3 16/15 16/21 20/18 32/5
**requester [1]** 14/23
**requesters [7]** 11/24 13/14 19/5 19/7 21/18 24/11 31/10
**requesting [1]** 24/16
**requestor [2]** 14/16 14/23
**requestor's [1]** 14/19
**requestors [1]** 18/25
**requests [32]** 8/14 8/18 8/22 12/18 12/25 13/8 13/10 13/11 14/10 14/24 15/6 15/11 18/4 18/12 19/1 20/10 20/16 21/8 21/19 21/21 21/21 23/16 24/14 24/18 27/4 27/13 27/13 27/14 27/14 27/16 31/22 32/15
**require [3]** 32/12 32/12 32/22
**required [6]** 11/1 15/15 15/18 22/1 23/7 27/24
**requires [6]** 16/11 17/11 17/21 19/20 23/3 31/25
**requiring [1]** 11/1
**resources [12]** 4/4 5/25 7/12 8/17 17/23 18/1 18/3 18/6 18/9 18/15 21/5 31/21
**respect [10]** 12/7 13/8 16/12 19/9 25/10 26/19 27/12 27/14 27/15 27/19
**respectfully [1]** 26/11
**respond [5]** 10/5 20/7 24/24 27/23 29/25
**response [5]** 27/22 28/15

**responses [4]** 3/2 18/21 23/23 33/10
**responsibility [1]** 21/24
**responsive [1]** 15/17
**restraint [1]** 9/4
**restraints [2]** 8/21 8/25
**restructured [1]** 7/12
**result [1]** 20/17
**results [2]** 20/12 20/21
**review [6]** 12/5 16/20 17/1 17/1 17/4 17/5
**revisit [1]** 32/5
**RIF [1]** 6/15
**RIF'ed [1]** 6/13
**RIFs [1]** 6/18
**right [25]** 2/9 2/14 4/1 9/6 10/4 15/20 19/10 19/12 20/17 22/2 22/2 22/17 25/22 25/25 26/8 26/14 28/7 28/25 29/22 30/5 30/7 32/18 32/23 33/1 34/3
**rights [6]** 14/7 14/19 15/10 19/13 22/8 25/20
**rings [4]** 12/23 24/15 25/2 25/11
**rise [2]** 17/12 32/15
**role [2]** 32/8 32/9
**Room [1]** 1/24
**rough [1]** 26/1
**RPR [1]** 35/12
**ruled [1]** 10/23
**run [3]** 20/17 20/24 21/4
**runs [1]** 25/14

**S**

**said [7]** 12/20 17/24 17/25 20/2 23/24 31/7 33/24
**same [8]** 9/11 10/25 11/24 11/24 14/18 30/18 30/18 30/20
**say [17]** 6/4 7/3 7/19 7/24 8/2 12/23 13/4 13/10 13/13 18/19 18/19 19/22 20/6 21/6 21/25 26/25 30/23
**saying [5]** 17/21 19/16 28/24 31/9 33/22
**says [5]** 17/11 18/2 19/20 22/4 22/19
**schedule [1]** 29/11
**scope [2]** 21/1 22/1
**second [3]** 12/6 23/11 32/10
**see [5]** 31/1 31/3 31/9 32/23 32/24
**seek [1]** 19/11
**seeking [2]** 9/22 19/1
**seeks [4]** 10/25 12/10 24/18 24/19
**seem [2]** 7/23 15/5
**seemed [1]** 11/9
**seen [2]** 2/18 18/14
**sense [3]** 9/19 25/4 27/21
**separate [1]** 12/13
**separately [1]** 30/19
**serves [1]** 23/15
**set [3]** 28/16 29/12 29/14
**setting [1]** 27/5
**Seventy [1]** 16/16
**Seventy-five [1]** 16/16
**shape [2]** 16/13 17/17

| | | |
|---|---|---|
| **S** | **statutory [1]**   18/6 | **that's [26]**   3/16 4/8 6/12 |
| **Sherry [3]**   1/22 35/3 35/12 | **stay [20]**   2/4 7/13 7/20 8/6 | 8/15 8/23 11/20 11/20 12/2 |
| **shift [1]**   23/15 | 9/16 10/11 10/18 10/19 10/22 | 13/11 14/5 16/13 17/23 18/16 |
| **should [13]**   7/7 9/10 9/15 | 12/4 14/13 14/14 22/19 23/14 | 19/2 19/8 19/19 21/12 21/25 |
| 10/9 10/10 13/13 17/24 18/2 | 24/20 24/20 26/7 26/16 30/13 | 22/1 22/13 25/13 26/1 28/2 |
| 21/15 21/18 21/19 22/11 32/5 | 32/5 | 30/9 31/6 31/13 |
| **show [6]**   20/12 20/25 21/8 | **stayed [6]**   3/8 9/10 23/11 | **their [17]**   5/8 5/11 5/12 |
| 21/11 22/23 25/7 | 23/16 24/1 26/5 | 6/19 13/5 16/21 19/6 20/17 |
| **showing [4]**   11/1 22/17 22/21 | **staying [1]**   9/17 | 20/24 21/3 21/7 25/6 25/6 |
| 27/24 | **stays [2]**   23/18 25/25 | 25/10 32/13 32/14 32/15 |
| **shown [4]**   22/18 22/24 23/8 | **still [1]**   10/17 | **them [14]**   2/21 3/3 6/13 6/14 |
| 31/4 | **Street [1]**   1/18 | 13/12 14/3 17/1 17/2 18/13 |
| **side [2]**   3/22 5/8 | **strict [1]**   13/19 | 21/3 25/6 32/6 32/6 32/22 |
| **significant [2]**   18/20 24/2 | **strikes [1]**   9/14 | **then [10]**   3/20 6/13 7/19 |
| **similar [2]**   12/5 14/11 | **striking [1]**   12/17 | 11/22 17/22 19/15 20/6 26/5 |
| **simply [8]**   7/25 12/1 12/13 | **structure [1]**   12/15 | 27/22 28/14 |
| 15/20 16/10 19/3 30/8 33/12 | **submission [3]**   27/20 28/1 | **there [40]** |
| **since [2]**   12/18 19/1 | 33/5 | **therefore [2]**   17/11 25/8 |
| **SIRI [1]**   1/14 | **submit [3]**   19/16 27/18 29/7 | **these [10]**   6/24 7/21 8/22 |
| **sit [2]**   16/25 16/25 | **submitted [3]**   8/17 21/19 | 12/12 14/9 14/24 16/15 25/8 |
| **situation [1]**   17/24 | 21/20 | 29/16 32/15 |
| **six [1]**   4/16 | **submitting [1]**   18/25 | **they [64]** |
| **skipped [1]**   22/16 | **substantial [1]**   31/12 | **they would [1]**   28/3 |
| **so [72]** | **such [2]**   14/23 18/4 | **thing [1]**   5/20 |
| **solely [2]**   4/23 12/4 | **suggesting [1]**   22/11 | **things [4]**   2/19 6/22 14/4 |
| **some [14]**   3/2 8/4 9/16 10/22 | **suggestion [1]**   11/16 | 22/18 |
| 13/11 14/4 15/8 19/24 20/1 | **Suite [1]**   1/15 | **think [24]**   5/17 6/17 7/9 |
| 22/20 26/15 28/17 31/1 32/1 | **supervise [1]**   10/13 | 7/10 8/23 8/25 13/12 18/20 |
| **somebody [1]**   21/15 | **supervise disclosure [1]** | 18/21 18/24 19/8 20/2 20/3 |
| **someone [5]**   13/9 21/20 22/12 | 10/13 | 25/23 28/8 29/15 29/16 31/6 |
| 27/2 27/4 | **supervisor [3]**   3/22 4/1 5/4 | 31/7 31/19 31/23 31/25 32/7 |
| **something [5]**   2/17 13/22 | **supervisors [1]**   4/15 | 33/14 |
| 15/9 17/19 33/20 | **supplemental [1]**   27/15 | **this [50]** |
| **somewhat [1]**   6/11 | **support [1]**   24/6 | **those [18]**   3/3 4/17 5/5 5/18 |
| **soon [1]**   30/12 | **suppose [1]**   12/19 | 6/19 7/13 7/14 8/22 10/12 |
| **sooner [1]**   3/13 | **supposed [1]**   32/10 | 14/6 16/18 19/13 21/21 22/5 |
| **sorry [7]**   3/25 4/21 22/9 | **sure [7]**   3/25 7/4 7/7 13/7 | 23/1 23/25 25/13 32/2 |
| 22/13 29/20 29/24 33/21 | 14/4 14/5 16/8 | **though [3]**   6/10 17/6 32/11 |
| **sort [2]**   12/17 15/6 | **sympathetic [1]**   30/25 | **thoughts [1]**   22/16 |
| **sought [2]**   11/3 11/7 | **system [2]**   19/7 19/7 | **three [2]**   21/21 29/9 |
| **sources [1]**   15/5 | | **through [2]**   6/21 6/21 |
| **speak [2]**   11/17 14/2 | **T** | **throughout [1]**   13/2 |
| **speaks [1]**   31/23 | **take [6]**   6/17 6/22 10/7 | **time [6]**   4/9 4/16 7/22 9/25 |
| **specific [15]**   4/8 5/24 12/12 | 11/16 23/15 28/8 | 14/21 31/9 |
| 14/8 14/8 18/2 20/11 20/16 | **taken [6]**   6/9 13/2 16/1 16/4 | **timeliness [1]**   18/21 |
| 22/24 24/14 24/15 24/16 | 31/1 31/2 | **timely [6]**   14/10 14/16 14/24 |
| 24/19 25/12 33/7 | **takes [3]**   27/1 27/2 27/3 | 18/13 19/12 28/5 |
| **specifically [3]**   7/10 17/25 | **taking [1]**   25/5 | **today [5]**   6/6 9/13 10/17 |
| 24/8 | **talking [4]**   8/5 8/6 8/24 | 26/22 28/7 |
| **staff [12]**   3/21 3/23 4/1 | 29/10 | **together [1]**   15/24 |
| 4/15 5/4 5/12 5/22 23/1 | **Taylor [15]**   1/13 2/8 9/21 | **too [3]**   19/2 33/13 34/5 |
| 26/19 26/23 27/1 27/12 | 10/5 23/24 24/4 24/9 24/22 | **took [1]**   22/10 |
| **staffing [1]**   26/18 | 26/9 27/18 27/20 27/25 28/19 | **top [3]**   3/12 14/6 27/8 |
| **stage [1]**   11/6 | 29/23 30/14 | **towards [1]**   3/12 |
| **stages [1]**   10/3 | **teach [1]**   17/6 | **traditional [1]**   16/9 |
| **stall [1]**   12/1 | **team [2]**   7/3 7/9 | **train [1]**   27/1 |
| **stand [1]**   2/19 | **Technology [1]**   17/3 | **trained [1]**   27/5 |
| **standard [1]**   31/7 | **tells [1]**   18/17 | **transcript [2]**   1/10 35/4 |
| **stark [1]**   14/15 | **termination [1]**   9/17 | **treat [2]**   30/7 30/12 |
| **start [3]**   3/13 10/8 17/21 | **test [2]**   20/12 20/21 | **true [4]**   11/20 21/12 25/9 |
| **state [2]**   2/5 6/12 | **Texas [11]**   2/18 4/13 6/25 | 35/4 |
| **statement [2]**   9/13 24/13 | 7/4 7/16 8/19 15/1 15/9 | **try [2]**   11/7 25/19 |
| **states [4]**   1/1 1/11 2/12 | 15/23 16/9 31/14 | **trying [3]**   6/11 22/14 22/15 |
| 24/8 | **than [18]**   3/13 4/9 6/4 6/22 | **two [3]**   4/15 21/20 29/9 |
| **status [3]**   1/10 5/10 26/25 | 10/24 11/15 12/25 13/22 14/5 | **typical [1]**   15/25 |
| **statute [16]**   10/11 11/2 12/3 | 15/22 15/23 17/19 18/12 | |
| 16/11 16/13 17/11 17/16 | 18/18 21/20 27/6 29/8 32/4 | **U** |
| 17/21 22/4 22/4 22/7 22/8 | **thank [5]**   10/6 33/2 33/16 | **U.S [1]**   1/23 |
| 23/3 25/20 31/25 32/16 | 34/2 34/3 | **unable [1]**   17/22 |
| | **that [258]** | **under [8]**   4/12 10/14 14/12 |

## U

**under... [5]**  19/11 22/8
 25/20 25/22 30/13
**understand [9]**  6/10 6/16 8/8
 16/8 27/8 27/9 31/15 33/4
 33/19
**understanding [5]**  4/24 5/7
 5/11 26/4 26/6
**understood [1]**  20/3
**unfair [3]**  14/11 25/2 25/8
**unique [1]**  27/5
**UNITED [3]**  1/1 1/11 2/12
**universe [1]**  16/2
**unless [4]**  10/1 11/19 19/20
 29/1
**unpack [1]**  15/13
**unrealistic [1]**  16/18
**unsupportable [1]**  18/7
**unsurprisingly [1]**  10/7
**until [4]**  4/14 5/1 10/22
 17/19
**up [9]**  5/19 6/6 12/22 20/1
 22/10 26/19 27/1 29/12 32/16
**update [1]**  30/15
**upon [4]**  20/13 20/16 20/21
 21/1
**us [13]**  9/14 11/10 17/3 17/6
 17/9 17/10 18/17 19/22 20/12
 20/25 25/21 28/24 33/9
**USAO [1]**  1/17

## V

**vaccine [1]**  20/14
**vaccines [1]**  20/22
**versus [2]**  2/3 5/12
**very [6]**  8/4 9/16 10/2 15/25
 17/24 27/5
**view [1]**  19/20
**views [1]**  30/10
**violated [1]**  19/13
**volume [2]**  15/17 17/4
**vs [1]**  1/5

## W

**wait [6]**  7/24 10/21 16/14
 16/17 31/13 32/10
**waiting [1]**  7/24
**want [20]**  2/20 2/24 3/25 5/9
 9/6 13/11 13/13 13/23 20/15
 26/17 27/21 27/23 30/17
 31/24 33/11 33/12 33/14
 33/18 33/24 33/25
**wanted [2]**  11/9 13/14
**wanting [2]**  27/18 31/15
**wants [3]**  19/11 25/17 25/17
**was [11]**  3/6 5/17 7/9 7/14
 7/14 13/18 13/18 16/3 17/18
 22/14 22/15
**Washington [3]**  1/5 1/19 1/24
**way [8]**  3/7 8/13 11/8 16/13
 16/19 17/16 18/13 20/24
**ways [2]**  17/3 19/4
**we [73]**
**we'll [2]**  10/8 32/24
**welcome [4]**  27/20 33/12
 33/25 34/1
**welcomes [1]**  23/2
**well [20]**  2/15 8/18 11/13
 13/7 15/2 15/12 16/21 17/11

17/16 18/22 19/8 22/19 26/8
26/14 27/25 28/22 30/16
32/23 34/1 34/3
**were [15]**  4/9 6/3 6/9 6/12
 6/13 6/18 7/11 10/21 15/6
 15/21 22/9 22/11 25/16 25/24
 25/25
**what [46]**
**What's [1]**  26/3
**whatever [3]**  27/23 28/19
 30/1
**when [26]**  4/6 7/11 7/20 7/25
 9/13 11/10 15/15 17/7 17/7
 17/10 17/24 18/25 19/13 21/2
 21/4 21/25 22/5 23/7 25/2
 27/7 27/25 28/3 28/14 29/12
 30/3 33/23
**where [14]**  2/19 4/12 4/20
 10/15 11/6 15/8 18/8 19/2
 21/11 23/13 24/15 29/15 32/5
 32/24
**whether [8]**  3/7 9/9 9/9 12/6
 13/10 15/8 26/18 27/13
**which [19]**  3/14 6/25 8/12
 10/23 12/10 12/17 14/1 14/2
 14/6 14/17 14/22 19/12 20/13
 25/25 28/17 31/3 31/12 31/17
 33/14
**while [3]**  14/16 14/18 19/9
**who [12]**  4/21 5/3 6/1 6/3
 6/9 7/6 13/9 16/15 16/20
 21/20 21/25 22/10
**whoever [1]**  24/5
**why [4]**  7/7 21/14 21/18
 21/21
**wide [1]**  5/21
**will [19]**  4/6 9/12 9/15 10/5
 11/16 16/16 17/19 21/3 23/18
 24/10 27/7 30/11 30/12 32/20
 32/20 32/20 32/21 33/4 33/18
**willing [3]**  12/21 12/22
 12/23
**wish [1]**  8/9
**within [4]**  16/11 20/15 21/1
 22/1
**without [5]**  11/1 29/10 30/8
 30/11 33/4
**won't [1]**  13/19
**wonder [1]**  15/7
**word [1]**  25/6
**work [5]**  6/21 7/10 7/16
 19/19 21/3
**working [10]**  4/22 5/3 5/5
 5/6 5/22 6/2 6/3 6/18 6/20
 7/3
**world [2]**  29/15 31/3
**would [56]**
**wouldn't [1]**  14/2
**wrong [2]**  19/10 25/21

## Y

**Yeah [4]**  3/5 7/2 30/17 31/18
**year [2]**  6/4 26/18
**years [15]**  8/2 8/7 10/23
 15/18 16/2 16/4 16/10 16/14
 16/16 16/17 17/20 27/1 27/2
 27/3 27/8
**yes [7]**  3/18 10/3 12/8 24/25
 25/12 26/1 30/2
**yet [2]**  17/10 28/24

**York [1]**  1/15
**you [128]**
**you're [3]**  6/14 22/1 33/12
**your [64]**
**yours [2]**  31/10 32/4
**yourself [1]**  11/12

## Z

**zero [1]**  25/12
**zeros [1]**  16/6