# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br> Plaintiff, <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, et al., <br><br> Defendants. | Civ. A. No. 25-0825 (RDM) |

**SUPPLEMENTAL BURK DECLARATION**

1.      I am the Director of the Division of Disclosure and Oversight Management ("DDOM") in the Center for Biologics Evaluation and Research ("CBER"), United States Food and Drug Administration ("FDA"), in Silver Spring, Maryland. I have been the Director of DDOM since June 24, 2018.

2.      As the Director of DDOM, I have overall responsibility for the disclosure of records officially maintained by CBER, which is the FDA component that regulates biological products such as blood, vaccines, gene therapy, and human cells, tissues, and cellular- and tissue-based products. DDOM is currently composed of the Access Litigation and Freedom of Information Branch ("ALFOI"), the Electronic Disclosure Branch, and two newly established Special Disclosure Units ("Units") that report to a recently appointed Deputy Division Director. Prior to becoming the Director of DDOM, I worked within two of these DDOM areas. I was the Team Lead of the Electronic Disclosure Team for approximately nine-and-a-half years. Before that, I was a member of ALFOI for four years.

3.    ALFOI is primarily responsible for the review and disclosure of CBER-maintained records in response to Freedom of Information Act ("FOIA") requests and FOIA litigation. At times, ALFOI will also be responsible for other litigation-related document requests, such as responses to discovery requests and third-party subpoenas. In addition, ALFOI responds to consultation requests from other federal agencies and other FDA components that are processing FOIA requests for records that contain information related to CBER. Records in a consultation request need to be reviewed, redacted, and returned to the entity requesting the consult for production.

4.    The newly created Units are primarily responsible for providing disclosure support where needed across DDOM. Currently, following completion of production in *PHMPT I*, described below, the Unit staff are primarily working on processing records in *PHMPT II*, also described below.

5.    I submit this declaration in support of Defendants' renewed request for a stay in this case. The statements contained in this declaration are based on my personal knowledge, as well as official FDA records and information available to me in my official capacity.

6.    The purpose of this declaration is to explain the basis for FDA's request for a stay of at least eighteen months, with a status report two weeks thereafter addressing the agency's ability to proceed with this case at that time. Specifically, this declaration describes CBER's disclosure staff's[1] general FOIA responsibilities and necessary work processes, current processes for handling FOIA requests, the status of Plaintiff Informed Consent Action Network's ("ICAN") FOIA Request No. 2024-965, recent and unprecedented workload obligations necessitating the

---

[1] For ease of reference, "CBER's disclosure staff" or "CBER's disclosure office" as used herein refers to "DDOM," "ALFOI," and "the Units," collectively.

requested stay, and CBER's efforts to hire and onboard additional staff and contractors to meet these unprecedent workload obligations and further process its FOIA backlog.

7.    As explained below, CBER's disclosure staff has devoted substantial resources since 2022 to satisfy the unprecedented production orders entered by the United States District Court for the Northern District of Texas in *Public Health & Medical Professionals for Transparency v. FDA*, Civ. A. No. 21-1058 (MTP) (N.D. Tex.) ("*PHMPT I*") and *Public Health & Medical Professionals for Transparency v. FDA*, Civ. A. No. 22-0915 (MTP) (N.D. Tex.) ("*PHMPT II*"). CBER maintains a number of queues for handling different categories of FOIA requests, based on anticipated processing time (e.g., simple to complex) or record type (e.g., inspection reports), processing each queue generally on a first-in, first-processed basis, to provide an efficient and fair release process. However, a request "jumping the queue" may happen when a court imposes a different time frame, for example, by setting a deadline, or the parties agree on a processing schedule. As further explained below, *PHMPT I* and *PHMPT II* have imposed on FDA an extraordinary workload that FDA could not have predicted, and FDA has worked to the best of its ability in responding to those orders. Later orders in *PHMPT I* and *PHMPT II* increased the total number of pages to be produced in both cases by approximately sixty percent. These orders catapulted the *PHMPT I* and *PHMPT II* requests to the front of the queue and necessarily delayed processing of all other requests.

8.    Collectively, *PHMPT I* and *PHMPT II* required CBER's disclosure staff to produce at least 90,000 to 110,000 pages per month from July 2023 to November 2023. Then, in *PHMPT II*, after a brief ramp-up period, CBER's disclosure staff was ordered to produce at least 180,000 pages per month and complete production by June 30, 2025. To meet the court's deadline in *PHMPT II*, CBER's disclosure staff had to produce on average more than 230,000 pages per

month. Through January 2, 2026, CBER's disclosure staff has produced over 5.4 million pages in *PHMPT II* and over 1.8 million pages in *PHMPT I*. These substantial productions were ordered alongside a backdrop of other increased workload obligations, including an overall increase in FOIA requests and FOIA litigation over the past few years stemming, in large part, from requests related to FDA's work pertaining to the COVID-19 pandemic. As further explained below, CBER's disclosure staff took extraordinary measures, including the hiring of temporary contract staff, to meet these orders.

9.      In *PHMPT I*, a dispute arose as to whether an emergency use authorization ("EUA") file fell within the scope of the FOIA request. On December 6, 2024, the court held that it did and ordered that production of the EUA file in *PHMPT I* be completed on or before June 30, 2025, which was the same production deadline entered in *PHMPT II* at the time. Mem. Op. & Order, *PHMPT I*, Civ. A. No. 21-1058, (Dec. 6, 2024), ECF 101. On January 10, 2025, the court denied FDA's motion to alter the judgment to extend the production deadline. *Id*., Op. & Order (Jan. 10, 2025), ECF 108. As a result, FDA was required to process approximately 600,000 additional pages of records, which CBER's disclosure office produced by the June 30, 2025 deadline, and, later, a supplemental production of approximately 200 additional pages on August 26, 2025. CBER's disclosure office's production obligation in *PHMPT I* thus is now complete.

10.      Nonetheless, pursuant to a follow-on order in *PHMPT II*, FDA also must produce two additional EUA files containing approximately 2.8 million additional pages of records, for a total increase in both cases of approximately 3.4 million pages.[2] These additional records, in turn, raise the number of pages collectively sought from approximately 5.7 million to 9.1 million, an

---

[2] Am. Order, *PHMPT II*, ECF No. 52 (June 9, 2025) (entering negotiated schedule); Joint Status Report, *PHMPT II*, ECF No. 49 (May 14, 2025).

increase of approximately 60 percent. In a May 15, 2025 order (amended by agreement of the parties and approval of the court on June 9, 2025), the Court ordered the additional records in *PHMPT II* to be produced by October 1, 2026, again at a minimum monthly rate of 180,000 pages per month. Through January 2, 2026, CBER's disclosure office has produced more than 1.1 million pages in response to the May 15, 2025 order in *PHMPT II*.

11.     CBER's disclosure office has had to triage its limited resources to comply with these unprecedented court-ordered FOIA productions while responding to other FOIA requests to the extent possible given available resources. At the same time, CBER's disclosure office resources have also been increasingly devoted to lawsuits from plaintiffs, such as ICAN, represented by Siri & Glimstad ("Siri"), who are also plaintiffs' counsel in *PHMPT I* and *PHMPT II*. Indeed, Siri is counsel for plaintiffs in the vast majority of the current FOIA litigation related to records processed by CBER's disclosure office, and CBER's disclosure office has received hundreds of FOIA requests from 2019 to date from Siri or Siri-represented parties.

12.     Additionally, earlier this year, an unanticipated staff disruption affecting CBER's disclosure office and the continuing effects of that disruption have heightened the need for a continued stay. On April 1, 2025, staff in several FDA divisions, including some within CBER's disclosure office, received reduction-in-force ("RIF") notices and were placed on administrative leave. In May 2025, FDA began the process of rescinding RIF notices for FOIA staff within CBER's disclosure office and reincorporating those who agreed to return to their respective offices. But several staff members permanently left the agency. Overall, CBER's disclosure office lost experienced and trained staff. FDA continues to address the cumulative impact of staff and contractor departures, a hiring freeze, and funding uncertainty on immediate operations, including CBER's processing of FOIA matters.

13.     Denying a stay of this case will compromise CBER's disclosure office's ability to meet its *PHMPT II* deadlines while continuing to process the hundreds of FOIA requests pending ahead of Plaintiff's request, which is currently 471 in the complex queue (as of January 5, 2026).

**FDA'S LEGAL OBLIGATIONS TO PROTECT CONFIDENTIAL INFORMATION**

14.     Many records that are responsive to FOIA requests received by CBER contain information that is exempt from disclosure. FOIA exempts several categories of information from its disclosure requirements, including trade secrets and confidential commercial or financial information obtained from a person (5 U.S.C. § 552(b)(4)); information covered by the deliberative process privilege, attorney work product privilege, or attorney-client privilege (5 U.S.C. § 552(b)(5)); and personnel, medical, and similar files if disclosure would result in a clearly unwarranted invasion of personal privacy (5 U.S.C. § 552(b)(6)).

15.     Consistent with FOIA's exemptions, the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits the release of trade secret information to those other than Department of Health and Human Services employees, Congress, or the courts where relevant in cases brought under the FDCA (21 U.S.C. § 331(j)). The Trade Secrets Act prohibits the release of trade secret information unless otherwise authorized by law (18 U.S.C. § 1905). In addition, FDA regulations provide that information is unavailable for public disclosure if it is: a trade secret or commercial information that is privileged or confidential (21 C.F.R. § 20.61); or identifying information in medical or similar files that, if disclosed, would be a clearly unwarranted invasion of personal privacy (21 C.F.R. § 20.63). As specified by regulation, FDA is also authorized to withhold from public disclosure its intra- and inter-agency communications (21 C.F.R. § 20.62).

16.     As a result, it is important for CBER's disclosure office to perform a careful line-by-line, word-by-word review of all responsive records before production, parsing the information that is protected from the information that is not.

**CBER'S DISCLOSURE OFFICE'S PROCESS FOR HANDLING FOIA REQUESTS**

17.     FOIA requests for CBER-maintained records are forwarded to CBER's disclosure staff from the Division of Headquarters Freedom of Information, which is the centralized intake and administrative processing center for FDA FOIA, in the Office of Disclosure, Information, Governance and Accessibility within FDA's Office of Management and Enterprise Services. Consistent with the FOIA (5 U.S.C. § 552(a)(6)(D)) and an FDA regulation (21 C.F.R. § 20.43), CBER's disclosure office implements multitrack processing by placing incoming FOIA requests for CBER-maintained records in one or more of six queues,[3] based on the volume, complexity, or subject matter of the requested records. The six queues are:

   a. Fast Track: Requests in the Fast Track can be answered with readily available documents that are expected to require little to no redaction. Requests are placed in this track usually because they seek records that previously were reviewed and redacted (typically in response to a previous records request) or information that is publicly available (often from records that were reviewed, redacted, and placed on FDA's website). Typically, staff processing time is estimated to be less than four hours for a request placed in this queue.

_____

[3] CBER's disclosure office eliminated its "Influenza Track," which contained requests seeking records related to pandemic influenza, influenza vaccines, and other flu-related topics, because no requests were pending in that Track as of February 29, 2024. Requests that have been granted "expedited processing" by FDA's Division of Headquarters Freedom of Information are not placed in any of the tracks listed in paragraph 17. Those requests are handled separately and processed as soon as practicable on a first-in, first-processed basis, based on the date of receipt. See 21 C.F.R. § 20.44(f).

b.  Simple Track: Requests in the Simple Track require minimal processing time, estimated to take between four to sixteen hours.

c.  Complex Track: The Complex Track includes requests that require more processing time than the Fast Track or Simple Track, i.e., estimated processing time of more than sixteen hours. These requests usually require extensive time to locate, review, and/or redact the records and often involve voluminous records.

d.  Inspection Records Track: Requests in the Inspection Records Track seek records related to CBER-led inspections. This track includes both simple (estimated processing time of less than sixteen hours); and complex (estimated processing time of more than sixteen hours).

e.  510(k) Track: This track includes requests seeking pre-market notification (21 U.S.C. § 510(k)) documents submitted by manufacturers prior to commercial distribution of devices regulated by CBER.

18.     Requests in each queue are generally assigned to reviewers for processing on a first-in, first-processed basis (that is, the first request received and placed in the Simple Track will generally be assigned to a reviewer before the second request in the Simple Track). The speed at which a request is ultimately processed in relation to other requests in different queues (and even other requests in the same queue) can be affected by many variables, including: the scope of the request, the speed at which a requester responds to inquiries from reviewing staff, and whether a request was initially routed to a different FDA component before it was determined that any responsive records would be housed within CBER. Moreover, some queues move faster than other queues, so the number of requests ahead of a particular request in one queue may not reflect whether it will be processed before a particular request in a different queue. Thus, a request at the

front of the Complex Track could be processed after a request with multiple requests ahead of it in the Simple Track.

19.     When a request is assigned to a reviewer for processing, the reviewer must search for and collect potentially responsive records from various file locations, including hard copy and electronic filing systems. In addition, a reviewer may need to contact CBER personnel and direct them to search their individual files. Records available only in hard copy are scanned into electronic files. After the reviewer collects potentially responsive records, the reviewer conducts an initial review to determine which of the collected records are, in fact, responsive to the request.

20.     Next, the reviewer conducts a line-by-line, word-by-word disclosure review of the responsive records to determine which, if any, FOIA exemptions apply, and then electronically redacts the material, as appropriate. CBER's review may (and often does) require research to evaluate whether certain information falls within a FOIA exemption. For example, a CBER disclosure office reviewer may research whether certain information has been made public and thus is no longer "confidential."

21.     CBER's disclosure staff may consult with FDA's Office of the Chief Counsel to resolve questions on complex or novel disclosure issues. Then, the reviewer conducts a quality-control check to ensure that the responsive records have been properly prepared for public disclosure and, finally, prepares copies of the responsive records for delivery to the requester. Throughout the process, the ALFOI branch chief, Deputy Division Director, or I may provide substantive input regarding the scope of the record searches and whether the records may be disclosed.

22.     Additionally, if a record contains information belonging to other federal agencies, FDA will send the record to the relevant agencies for consultation. These consultations can occur

more than once in the review process and inform FDA's determination about the applicability of any FOIA exemption.

23.     After the necessary review and internal and external consultations, records may be transmitted to FDA's Office of the Chief Counsel and the Department of Health and Human Services' Office of the General Counsel for legal review. Once that legal review is completed, a senior reviewer in CBER's disclosure staff conducts a quality-control review to ensure that the responsive records have been properly prepared for public disclosure.

24.     The same process set forth in paragraphs 19-23 for FOIA requests are also followed with respect to records required to be produced in response to discovery requests, third-party subpoenas, and court orders in FOIA cases. However, when a pending FOIA request becomes the subject of litigation, the typical "first-in, first-processed" system may be affected. For example, a court order (like those in *PHMPT I* and *PHMPT II*) may require CBER's disclosure staff to process a request on a specific timeline, effectively mandating that a request "jump" the queue. A court may also order the parties to confer and attempt to reach agreement on a production schedule.

25.     In the absence of a court order or a filed agreement between the parties on a production schedule, FOIA requests that are the subject of litigation remain in their original position in their assigned Track(s) and are not removed from the FOIA queue(s). Thus, if a FOIA request that was the subject of litigation came to the front of its queue (through the typical first-in, first-processed system), CBER's disclosure staff would not skip over the request because it was in litigation but, instead, would handle the request under the typical first-in, first-processed system. For example, as of the date of this declaration, two FOIA requests submitted by ICAN that are the subject of litigation (FOIA Request Nos. 2019-4753 and 2019-4767) have reached the top of CBER's Complex Track, and CBER has completed its production of records responsive to these

requests. *See Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-2456 (TSC) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-2457 (JEB) (D.D.C.).

### CBER'S DISCLOSURE OFFICE'S UNPRECEDENTED WORKLOAD

26.     Prior to the 2022 court-ordered production in *PHMPT I*, ALFOI consisted of nine regular staff and one supervisor and there were no Units. With this staff, ALFOI was able to keep its FOIA queues relatively stable. The following table illustrates the total number of FOIA requests received by CBER's disclosure office from fiscal years 2015 to 2018 (ranging from 255 to 343 FOIA requests) and the number of FOIA requests pending at the end of each fiscal year (ranging from thirty-nine to fifty-four FOIA requests). During this time, CBER's FOIA litigation workload was limited or non-existent in any given year.

CBER Disclosure Office FOIA Workload Summary - Fiscal Years 2015 to 2018

| Fiscal Year | Total Requests Received | Pending Requests, End of FY | Total FOIA Suits Filed |
| --- | --- | --- | --- |
| 2015 | 255 | 39 | 0 |
| 2016 | 343 | 49 | 1 |
| 2017 | 266 | 47 | 0 |
| 2018 | 291 | 54 | 0 |

27.     Since fiscal year 2019, the number and complexity of FOIA requests received by CBER's disclosure office, with limited exception, increased. As shown in the following table, by fiscal year 2021, CBER's disclosure office began to receive annual requests exceeding 500: it received 509 requests in fiscal year 2021 and 633 requests in fiscal year 2022. In fiscal year 2023, although the number of FOIA requests declined, the number of total requests that CBER's disclosure office was able to close also declined while the number of pending requests increased. The increase in pending FOIA requests from the end of fiscal year 2019 to the end of fiscal year 2024 was due in large part to requests for records related to the COVID-19 pandemic. In fiscal year 2024, the number of FOIA requests appeared to be stabilizing and CBER's disclosure office

was able to close more requests than in fiscal year 2023, but the number of pending requests increased.

CBER Disclosure Office FOIA Workload Summary – Fiscal Years 2019 to 2024

| Fiscal Year | Total Requests Received | Total Requests Closed | Pending Requests, End of FY | Total FOIA Suits Filed |
|---|---|---|---|---|
| 2019 | 391 | 361 | 83 | 3 |
| 2020 | 399 | 280 | 197 | 6 |
| 2021 | 509 | 326 | 380 | 5 |
| 2022 | 633 | 471 | 532 | 8 |
| 2023 | 487 | 336 | 679 | 10 |
| 2024 | 487 | 385 | 859[4] | 11 |

28.     Moreover, in fiscal year 2020, FOIA litigation also began to add significantly to the workload of CBER's disclosure office. More than ten new cases were filed in fiscal year 2024 seeking CBER records, an increase over fiscal year 2023, and another eleven were filed within the first five months of 2025. In total, from fiscal year 2019 to date, there have been more than fifty lawsuits filed seeking records maintained by CBER. As of October 1, 2025, CBER's disclosure office had 29 open litigation cases.

29.     Since 2019, Plaintiff has submitted more than 350 FOIA requests seeking CBER records, approximately 220 of which remained pending as of June 2025, and more requests continue to be submitted. ICAN filed fifteen new suits in 2025 involving CBER's disclosure office, one of which was dismissed with prejudice, four of which were dismissed on jurisdictional grounds, and two of which were consolidated. ICAN is the plaintiff in at least 16 open lawsuits seeking CBER records, including the present one.

---

[4] This number is fluid and includes, for example, pending appeals.

30.     Managing the FOIA backlog has required the dedication of substantial resources in light of the unprecedented court-ordered productions in *PHMPT I* and *PHMPT II*. *See* ¶¶ 7-11, *supra*.

31.     The records in *PHMPT I* related to Pfizer-BioNTech's Comirnaty vaccine for COVID-19 approved for individuals 16 years of age and older and consisted of over 1.2 million pages. The Northern District of Texas court ordered CBER's disclosure office to produce these records beginning in March 2022 at an unprecedented average rate of 55,000 pages per month. In consideration of the agency's motion to partially modify the scheduling order, the court imposed a graduated production schedule, which required CBER's disclosure office to produce 10,000 pages per month in March and April 2022; 80,000 pages per month in May, June, and July 2022; 70,000 pages in August 2022; and 55,000 pages per month thereafter. FDA completed those productions on November 1, 2023. (*PHMPT I*, ECF Nos. 67 and 75).

32.     Given that the production rate ordered in *PHMPT I* far exceeded FOIA production rates typically ordered by courts, CBER's disclosure office implemented sweeping organizational and work process changes, including, among other things, expanding CBER's disclosure staff by hiring contractors and additional full-time employees ("FTEs"), reorganizing staff, and diverting resources from processing other FOIA matters. Among other efforts, the office initially assigned nine FTEs and hired approximately nine and a half (nine full-time and one part-time) contractors primarily to focus on processing records for the *PHMPT I* litigation, leaving a small team of six FTEs to assume primary responsibilities for all other FOIA requests. CBER estimates that the total cost of contractors alone for processing records in *PHMPT I* through the November 1, 2023, production date was approximately $3.5 million.

33.    While CBER's disclosure office was marshaling its resources to comply with the *PHMPT I* production order, FDA was sued again in *PHMPT II*. In *PHMPT II*, the records at issue were in the Biological Product File(s) ("BPF") for Pfizer's approved 12-to-15-year-old indication for the Comirnaty vaccine for COVID-19 ("Pfizer 12-15 records") and Moderna's approved Spikevax vaccine for COVID-19 ("Moderna records"), estimated to total over 4.5 million pages. On June 12, 2023, the court imposed[5] an even more burdensome monthly production schedule:

a. From July 2023 to November 2023, CBER was required to comply with monthly rates ranging from 35,000 pages to 55,000 pages per month. This production was concurrent with the 55,000 pages per month being produced in *PHMPT I*. The effort to comply with the production order contributed to the backlog in CBER's disclosure office.

b. Starting in December 2023, CBER was required to produce at least 180,000 pages per month in *PHMPT II*, although it has needed to produce an average of more than 230,000 pages per month to meet the court's deadline.

c. Deadlines for completing the production in full compounded the burdens associated with the minimum monthly rates, which required the actual monthly productions to be even higher. All the Pfizer 12-15 records (estimated at nearly 500,000 pages) were produced by January 2, 2024, as required. All the Moderna BPF approval-related records (estimated at over 4 million pages) were produced by June 30, 2025.

d. On May 15, 2025, the *PHMPT II* court ordered the roughly 2.8 million pages of responsive EUA files in *PHMPT II* to be produced no later than October 1, 2026,

---

[5] Order, *PHMPT II*, ECF No. 38 (June 12, 2023).

at the same minimum monthly rate of 180,000 pages per month. Orders, *PHMPT II*, ECF Nos. 49, 50.

34.    Because of *PHMPT II* and the increase in FOIA litigation discussed above, CBER's disclosure office once again reallocated its staff, leaving only a handful of staff working on all non-*PHMPT* FOIA requests. CBER's disclosure office also brought on board six new FTEs between June and December 2023. Then, in 2024, CBER's disclosure office brought on eight more FTEs and extended eight contractors from a prior contract. Of the fourteen new FTEs, twelve were assigned as part of the Units, and two were assigned to process FOIA requests unrelated to the *PHMPT II* litigation. *See* ¶ 4, *supra*.  By December 31, 2024, CBER's disclosure office had a total of fourteen staff (including twelve Unit staff and two senior ALFOI staff) and eight contractors assisting with *PHMPT* litigation. At that same time, eight ALFOI staff were assigned to process FOIA requests unrelated to the *PHMPT* litigations.

35.    CBER undertook aggressive efforts to hire and train additional staff and contractors, reassign staff as available to assist in review of some records, seek funding, and restructure its resources in an attempt to effectuate production at a pace that is, to our knowledge, many orders of magnitude greater than anything any agency has ever encountered in a FOIA order. In total, since 2022, CBER's disclosure office added three supervisory positions and thirteen staff-level positions, more than doubling the size of the staff. Two of the supervisory positions were assigned to head the Units, which consisted of six staff positions each. Since the beginning of 2025, three of those Unit staff, two senior ALFOI staff, and two contractors have left the agency. Due to the hiring freeze that went into effect on January 20, 2025, FDA had been unable to backfill these positions. Additionally, though CBER had entered a new contract to extend the eight contractor positions until at least August 2026, a change in the contractor pay scale and several

contractors transitioning to part-time has left CBER's disclosure office with the equivalent of 6 full-time contractors. By November 30, 2025, CBER's disclosure office had just nine Unit staff and 6 contractors primarily assisting with the *PHMPT II* production. Eight ALFOI staff assigned to process non-*PHMPT* FOIA requests also remain, though their work this year was significantly hindered by the staff disruptions, government shutdown, and administrative changes within the agency. In addition, to date, the nearly half of CBER's staff have less than two years of required training to work independently, *i.e.*, without supervisory review and oversight, to fully contribute to CBER's disclosure efforts. More recently, however, to assist with FOIA work agency-wide, FDA has been in the process of onboarding contractors for all centers, including CBER. As of the date of this declaration, CBER has onboarded seven contractors and is in the process of onboarding an eighth. These additional contractors will primarily work on non-*PHMPT* FOIA requests, including, as their training permits, processing FOIA requests in CBER's Complex Track. FDA was also recently granted an exemption to the hiring freeze, and the agency is awaiting clarity on its current budget allocation before commencing with hiring.

36. Hiring new staff is merely a first step in the labor-intensive process needed to train employees so they can fully contribute to CBER's disclosure work. CBER's disclosure office cannot take shortcuts when hiring and training new employees. The process of advertising, recruiting, interviewing, and administrative onboarding alone takes several months (assuming a qualified candidate is found). Then, after a new employee is onboarded, it typically takes approximately two years for an employee to be adequately trained so they can independently contribute to the office's disclosure efforts. With the limited exception of those initially hired to assist with the unprecedented production orders in *PHMPT I* and *PHMPT II*, new employees are trained and expected to contribute to all of CBER's FOIA disclosure work (i.e., conducting

disclosure review across each of CBER's FOIA queues). New employees are thus often assigned work based on the depth of their knowledge and experience (e.g., a FOIA request in the Complex Track may be assigned to more experienced staff before newer employees). In the meantime, more senior employees monitor new employees to ensure they perform their assigned tasks accurately. As they develop, new employees are asked to engage in more complex tasks, and current employees continue to provide oversight so that these tasks, which often require more guidance, are performed accurately. Given this necessary process, while new employees are in training, they slow, at least initially, the efficiency of current staff, because staff must balance the need to onboard and train new hires against the need to timely and accurately process outstanding requests. Thus, although CBER's hiring and training efforts since 2022 represent the agency's good-faith investment to comply with its court-ordered production mandates and address the existing backlog of FOIA requests (including Plaintiff's request in this case), its resources remain limited by the lengthy ramp-up period for new employees.

37.    Since the *PHMPT II* order was issued, CBER, in consultation with the Office of the Chief Counsel, has reviewed every pending FOIA request that is the subject of litigation to determine whether the case should be stayed to enable CBER to satisfy its production mandates in *PHMPT I* and *PHMPT II*. In doing so, the agency considered, among other factors, the legal/procedural posture of the case, whether the parties had filed an agreed-upon production schedule, and the extent to which the request(s) at issue will continue to require CBER FOIA resources. Among other things, the agency considered cases to be ill-suited candidates for a request for a stay where a production schedule had been filed with a court and production was nearly complete, where responsive records overlap partially or completely with court-ordered productions in other cases, where a request could be narrowed to eliminate CBER-maintained records, or where

the parties were in the midst of summary judgment briefing. For example, the agency determined that one case was not an appropriate stay candidate because CBER had agreed to a production schedule in March 2023 (before the *PHMPT II* order issued), had already produced more than half of the responsive records, and had determined that all responsive records overlapped with records ordered to be produced in *PHMPT II*. *See Defending the Republic v. FDA*, Civ. A. No. 22-1237 (N.D. Tex.). By contrast, the agency determined that cases involving complex requests in which substantial processing (searching, review, and/or redaction) and production had not begun were more appropriate stay candidates.

38.     FDA (or the U.S. Department of Health and Human Services) has filed motions for stays in twenty FOIA cases seeking CBER records including the present one, and it has filed motions to extend stays when earlier stays ended. A stay has been granted, in whole or in part, in all but one of the cases in which the court issued a ruling on the motion,[6] including:

a.   *Wright v. Dep't of Health & Hum. Servs.*, Civ. A. No. 22-cv-1378 (RC) (D.D.C. May 18, 2022), Min. Order, ECF No. 28 (Oct.13, 2023) (granting unopposed motion for eighteen-month stay); Mem. Op., ECF No. 61 (July 31, 2025) (extending 18-month stay an additional six months); Min. Order (Dec. 5, 2025) (extending stay until June 5, 2026). The underlying FOIA request at issue is No. 364 in the Complex Track as of January 5, 2026.

b.   *Children's Health Def. v. FDA*, Civ. A. No. 23-cv-2316 (LLA) (D.D.C. Aug. 10, 2023); Min. Order (Dec. 13, 2023) (granting eighteen-month stay until further order of court, with status report in six months addressing need for further stay of

---

[6] In *Informed Consent Action Network v. FDA*, Civ. A. No. 23-cv-1508 (CKK) (D.D.C. May 25, 2023), plaintiff dismissed its complaint before the court ruled on the stay motion. *See id.*, Order, ECF No. 16 (Oct. 3, 2023).

proceedings); Min. Order (July 18, 2024) (extending stay based on a continued finding of exceptional circumstances and due diligence); Min. Order (Dec. 23, 2024) (extending stay based on continued finding of exceptional circumstances and due diligence, with a status report due June 13, 2025); Min. Order (Sept. 16, 2025) (extending stay 18 months, until February 22, 2027, with status reports every 90 days). The underlying FOIA request at issue is No. 302 in the Complex Track as of January 5, 2026.

c.  *Informed Consent Action Network v. FDA*, Civ. A. No. 23-cv-0219 (RBW) (D.D.C. Jan. 25, 2023), Order, ECF 27 (Nov. 21, 2023) (vacating all pending deadlines and setting conference in six months to discuss status); Order, ECF No. 29 (May 24, 2024) (extending stay, with status conference in six months); Min. Order (Nov. 25, 2024) (extending stay, with a status conference on July 7, 2025); Min. Order (July 23, 2025) (continuing stay with status conference on Jan. 13, 2026); Status Conf. (Jan. 13, 2026) (continuing stay until November 5, 2026). The underlying FOIA request at issue is No. 277 in the Complex Track as of January 5, 2026.

d.  *Children's Health Def. v. FDA*, Civ. A. No. 23-cv-0220 (RDM) (D.D.C. Jan. 26, 2023), Order, ECF No. 25 (Jan. 12, 2024) (granting stay of six months, with joint status report in six months); Min. Orders (Oct. 24, 2024 and April 9, 2025) (ordering FDA to begin processing responsive records no later than Aug. 9, 2026, with status reports every 90 days). The underlying FOIA requests at issue are No. 288 and No. 303 in the Complex Track as of January 5, 2026.

e.  *Children's Health Def. v. CDC*, Civ. A. No. 23-cv-0431 (TNM) (D.D.C. Feb. 16, 2023), Order, ECF No. 28 (July 24, 2024) (granting six-month stay on the Department of Health and Human Services' motion); Min. Entry (Jan. 24, 2025) (continuing the stay and ordering the parties to submit a joint status report by April 25, 2025, and every 90 days thereafter); Min. Order (July 28, 2025) (denying Plaintiff's request to lift stay). The underlying FOIA records at issue comprise a FOIA consultation request from CDC to FDA that sits in the Complex Track behind 342 earlier-submitted FOIA requests as of January 5, 2026.

f.  *Informed Consent Action Network v. FDA*, Civ. A. No. 23-cv-3282 (ABJ) (D.D.C. Nov. 2, 2023), Order, ECF No. 23 (Oct. 11, 2024) (granting stay of six months, with joint status report in six months to determine whether stay should be extended); Order, ECF No. 34 (Dec. 8, 2025) (extending stay until April 1, 2026). The underlying FOIA requests at issue are No. 441 and No. 442 in the Complex Track as of January 5, 2026.

g.  *Informed Consent Action Network v. FDA*, Civ. A. No. 23-cv-3675 (JMC) (D.D.C. Dec. 10, 2023); Min. Order (Sept. 4, 2024) (granting stay for six months); Order, ECF No. 25 (Apr. 10, 2025) (granting extension until October 10, 2025); Joint Status Report, ECF No. 28 (Dec. 2, 2025) (pending request for extension of stay). The underlying FOIA request at issue is No. 428 in the Complex Track as of January 5, 2026.

h.  *Solomon v. Dep't of Health & Hum. Servs.*, Civ. A. No. 24-cv-0572 (RBW) (D.D.C. Feb. 29, 2024); Order, ECF No. 27 (July 8, 2025) (continuing stay first entered Oct. 5, 2024 (ECF No. 25), ending on June 26, 2026, and setting status

conference for Jan. 13, 2026); Order, ECF No. 29 (Jan. 13, 2026) (continuing stay until November 5, 2026). The underlying FOIA request at issue is No. 464 in the Complex Track as of January 5, 2026.

i. *Informed Consent Action Network v. FDA*, Civ. A. No. 24-cv-1761 (AHA) (D.D.C. June 17, 2024); Order, ECF No. 18 (Nov. 20, 2024) (granting stay for eight months until July 21, 2025); Joint Status Report, ECF No. 19 (July 23, 2025) (request to extend stay for 18 months, pending). The underlying FOIA request at issue is No. 50 in the Complex Track as of January 5, 2026.

j. *Informed Consent Action Network v. FDA*, Civ. A. No. 24-cv-1905 (JDB) (D.D.C. June 28, 2024); Order, ECF No. 17 (Feb. 4, 2025) (granting stay for six months until August 5, 2025); Order, ECF No. 20 (Aug. 7, 2025) (granting extension until February 9, 2026). The underlying FOIA request at issue is No. 43 in the Complex Track as of January 5, 2026.

k. *Informed Consent Action Network v. FDA*, Civ. A. No. 24-cv-1906 (CRC) (D.D.C. June 28, 2024), Order, ECF No. 21 (Apr. 10, 2025) (granting stay for six months until October 10, 2025); Joint Status Report, ECF No. 24 (January 16, 2026) (pending request for extension of stay). The underlying FOIA requests at issue are No. 66, No. 67, and No. 445 in the Complex Track as of January 5, 2026.

l. *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0823 (JEB) (D.D.C. Mar. 18, 2025), Order, ECF No. 21 (Oct. 16, 2025) (granting 18-month stay until April 16, 2027); Notice of Appeal, ECF No. 23 (Oct. 24, 2025); on appeal, Case No. 25-5376, Order, Doc. No. 2141967 (D.C. Cir.) (setting briefing schedule).

The underlying FOIA request at issue is No. 19 in the Complex Track as of January 5, 2026.

m. *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0824 (AHA) (D.D.C. Mar. 18, 2025), ECF No. 20 (Jan. 29, 2026) (granting 18-month stay until and including April 16, 2027). The underlying FOIA request at issue is No. 5 in the Expedited Track as of January 5, 2026.

n. *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0826 (CJN) (D.D.C. Mar. 19, 2025), ECF No. 14 (June 13, 2025) (motion to stay for 18 months, pending). The underlying FOIA request at issue is No. 48 in the Complex Track as of January 5, 2026.

o. *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0827 (JMC) (D.D.C. Mar. 19, 2025), ECF No. 18 (Aug. 28, 2025) (granting 6-month stay, to Feb. 27, 2026, with joint status report due at that time).[7] The underlying FOIA request at issue is No. 54 in the Complex Track as of January 5, 2026.

## PLAINTIFF'S FOIA REQUEST

39.    Plaintiff submitted a FOIA request, assigned FOIA Request No. 2024-965, in 2024. CBER's FOIA office placed that request in the Complex Track, where it is presently No. 471 (as of January 5, 2026). This places Plaintiff's FOIA request behind 470 other FOIA requests, including 13 of its own requests currently pending in litigation. *See* ¶ 38, *supra.*

---

[7] A motion to stay for 18 months was also filed in *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0828 (APM) (D.D.C. Mar. 19, 2025), ECF No. 15 (June 13, 2025), before the case was consolidated with Civ. A. No. 25-cv-0827. In Civ. A. No. 25-cv-0828, the underlying FOIA request at issue is No. 56 in the Complex Track as of January 5, 2026

40.     ALFOI placed Plaintiff's FOIA request in the Complex Track because it is expected to require more than sixteen hours of processing time. This includes time to: search for and obtain responsive records, conduct the requisite line-by-line and word-by-word review of the records to determine whether any of the information contained in them is exempt from disclosure; redact exempt information in accordance with agency procedure; conduct a quality-control review of the redactions; and prepare the records for production by FDA. In light of these facts, CBER's disclosure office, after discussion with FDA counsel, determined that moving for a stay in the present suit was necessary if CBER is to meet the requirements of the *PHMPT II* production order.

41.     FDA understands Plaintiff's interest in receiving records responsive to its requests as quickly as possible, and CBER's disclosure office is committed to processing the FOIA request as soon as it is in a position to do so. But given the substantial impact that *PHMPT I* and *PHMPT II* have had on CBER's disclosure office's workload, and the large volume of requests from Plaintiff and other requesters that are ahead in the queue, CBER's disclosure office does not have the resources at this time to concurrently process and produce records in response to the request at issue in this litigation. Nor, at this time, can CBER's disclosure office reasonably estimate when Plaintiff's request will reach the top of the Complex Track. A stay through June 25, 2027 is sought, at which time FDA anticipates it will have completed its processing obligations in *PHMPT II*, further processed its backlog of non-*PHMPT* related FOIA requests, and will be in a better position to evaluate when it might be able to respond to Plaintiff's FOIA request. This time period reflects FDA's most current, realistic assessment of the bare minimum time needed to overcome the staffing and budgetary problems created by the unprecedented production orders that FDA has been facing. Meanwhile, CBER's disclosure office will continue its efforts to maximize its chances of satisfying the court-ordered production in *PHMPT II* so it can resume processing other

outstanding FOIA requests, including Plaintiff's request at issue in this case and the other requests Plaintiff previously submitted.

42.    Given the substantial continuing impact of *PHMPT I* and *PHMPT II* on CBER's resources despite significant office restructuring to accommodate the increased FOIA request and litigation workload, CBER's disclosure office does not have the capacity at this time to produce records in response to the request at issue in this litigation.

43.    If relief is granted, Plaintiff's request would retain its place in the Complex Track. Although CBER's disclosure office currently must devote substantial resources to reviewing records to satisfy the *PHMPT II* order, CBER's disclosure staff continues to process requests, as it is able, in its regular FOIA queues. Additionally, although the pace at which FOIA requests can be processed has been slowed substantially by production orders issued in *PHMPT I* and *PHMPT II*, CBER's disclosure office continues to assign and process FOIA requests generally on a first-in, first-processed basis.  With the addition of new contractors, *see* ¶ 35 *supra*, CBER's disclosure office anticipates its processing speed for non-*PHMPT* FOIA requests will increase as the new contractors are trained and begin to meaningfully contribute to the non-*PHMPT* FOIA workload. Accordingly, if relief is granted and the requests ahead of Plaintiff's request in the Complex Track are processed before such relief ends, CBER's disclosure office will process Plaintiff's request when it reaches the front of the queue, and the court will be notified.

*       *       *

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2026.

Suzann H. Burk -S

Digitally signed by Suzann H. Burk -S
Date: 2026.01.30 09:50:39 -05'00'

Suzann Burk
Director
Division of Disclosure and Oversight Management
Center for Biologics Evaluation and Research
Food and Drug Administration
U.S. Department of Health and Human Resources